## MILLER, et al., v. VILLAGE OF BROOKVILLE et al.

Common Pleas Court, Montgomery County.

No. 97706.   Decided July 27, 1948.

Murr & Murr, Dayton, for plaintiffs.
John H. Shivley, Oscar B. Scharrer, Robert C. Herkins, Dayton, for defendants.

## OPINION

By MILLS, J.

This is an action for declaratory judgment and to·quiet title filed by the plaintiffs against the defendant, the Village of Brookville.

It appears that Elgar Weaver and Elizabeth Z. Weaver, husband and wife, for the sum of one dollar and other valuable considerations to them paid by the Village of Brookville, Montgomery County, Ohio, an incorporated municipality under the laws of the State of Ohio, granted by quit claim deed to the said Village of Brookville, its successors and assigns forever, the 25 and 45 acre tracts of land, more particular described in the petition herein and the deeds introduced into evidence.

The deed to the village, which was executed and delivered on the 8th day of October, 1936, says further:

"That this tract is conveyed to the Village of Brookville, Ohio, to be used as a park, and is made subject to the following restrictions:

"First: That drinks with alcoholic content, spirituous or intoxicating liquor shall never be sold, trafficked in, dispensed or given away on these premises.

"Second: That no part of the premises shall be used or a permit issued for the use thereof by the authorities in control for entertainment, recreational or social purposes if drinks with an alcoholic content, spirituous or intoxicating liquors are to be used or consumed at such entertainment, recreational or social gathering.

"Third: The premises, or no part thereof are to be rented, leased or used as a profit making proposition, except that light refreshments and wholesome food may be sold on the premises, providing the profit therefrom accrues and is used for the benefit of the park. Granting the concessions for the dispensing or handling of the foregoing, wherein the park authorities receive a reasonable fee or division of the profits derived therefrom, shall be deemed as compliance therewith.

"Fourth: This conveyance is made to be and is in perpetuity for a park and pleasure ground purposes, and the foregoing restrictions shall be enforceable by injunction by the grantors, their heirs or assigns, or any citizen of the community who may be interested in the welfare of the park.

"It is the wish and request of the grantors herein that said grantee improve said land herein conveyed for park purposes, as soon as improvements can be conveniently made as follows:

"First: By the erection of a fence enclosing the premises, suitable as to appearance and utility for park purposes.

"Second: To properly landscape said grounds, lay out proper walks and driveways through said tract and properly maintain the same.

"Third: To have drafted a plan of landscaping and improvement by some competent landscape artist or authority, approved by grantors prior to entering upon the improvement program.

"Fourth: To provide for reforestation plan prepared by a competent authority on forestry.

"Fifth: To build a dam across the stream flowing through said premises creating a lake; the plan of said dam to be prepared by a competent engineer or authority on construction work of this nature and submitted to grantors for approval."

After naming the above uses the deed goes on further and says "and all the estate, title and interest of the said Elgar Weaver and Elizabeth Z. Weaver, either in law or in equity, of, in and to the said premises; together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof; to have and to hold the same to the only proper use of said Village of Brookville, Montgomery County, Ohio, its successors and assigns forever."

And the testimony shows that the real estate was taken off the tax duplicate, and no taxes paid so long as the Village of Brookville owned said real estate.

The Village of Brookville, Montgomery County, Ohio, passed Ordinance No. 93, which ordinance was passed on the 19th day of April, 1938, and reads as follows:

"Be It Ordained by the council of the Village of Brookville, Montgomery County, Ohio, all members elected thereto concurring:

"Section 1: That the following described real estate heretofore deeded to the Village of Brookville, Montgomery County, Ohio, is not needed for any municipal purpose, to wit:

"Situate in the County of Montgomery, in the State of Ohio, and in the Township of Clay and bounded and described as follows. Situated partly in the Township of Clay and partly in the Village of Brookville, and being part of Section 34, Town 6, Range 4 East, and bounded and described as follows:

"Beginning at the point of intersection of the center line of Brown Road with the center line of Arlington Road; thence Easterly along the center line of Brown Road 1674.42 feet; thence south 3 degrees East 2049.96 feet to the northeasterly right of way line of the D. and N. Traction Company; thence Northwesterly along the Northeasterly right of way of the D. and N. Traction Company to the center line of Arlington Road; thence Northerly along the center line of Arlington Road to the place of beginning, containing seventy (70) acres of land, more or less. Being same premises described in deed recorded in Deed Volume 792, page 172 of Deed Records of Montgomery County, Ohio.

"Section II: That, whereas, the said Village, because of lack of funds has been unable to comply with the provisions of the deed in the maintenance of said land for park purposes, and

"Whereas, it is the opinion of Council that said property should be returned to the former owner by execution of quit claim deed, and the former owner, to wit, Elgar Weaver, has expressed a willingness to receive said deed,

"The mayor of the Village is hereby authorized to convey said real estate by quit claim deed to said Elgar Weaver."

On the 20th day of April, 1938, the Village of Brookville, through its mayor, E. P. Landis, and clerk, Frank Borden, executed a quit claim deed back to Elgar Weaver, his heirs and assigns, forever, and in this deed is recited one dollar and other valuable considerations, paid by grantee.

The amended answer of the Village of Brookville, admits it received a deed and accepted said deed for the 70 acres from Elgar Weaver for park purposes, and that the said deed contains the restrictions as set forth in the petition.

The answer says the Village of Brookville took possession of said land for park purposes from the date of the deed and its citizens continued to use said land for park purposes continuously until a date following the reconveyance of said land to the said Elgar Weaver.

The defendant admits that on or about April 19th, 1938, the Council of the Village of Brookville, Ohio, passed its ordinance No. 93, a copy of said ordinance being set forth

in the petition herein, and did deliver to Elgar Weaver its certain quit claim deed as alleged in the petition which deed is recorded in Volume 842, page 231, of the Deed Records of Montgomery County, Ohio.

It says, however, that it and many of its residents and taxpayers claim the deed reconveying the land to the said Elgar Weaver, the original donor thereof, was invalid and that the said land should be returned to the said Village of Brookville and the title thereto restored to it as provided in the original deed from the said Elgar Weaver and wife to the defendant, Village of Brookville, Ohio, and that said reconveyance of the premises was made without consideration.

Further answering, defendant denies all other allegations in plaintiff's petition contained and not herein admitted, explained or qualified and prays that the court determine the validity of the said ordinance and deed returning said lands to Elgar Weaver; that the court protect the rights and interest of this defendant, its citizens and taxpayers in said land and for such other and further relief to which it or they may be entitled in law or equity.

The answer and cross-petition of Lawrence E. Bowser and Marie Alice Bowser sets up that they purchased .686-acre tract of said 70-acre tract on April 4, 1947 for $850.

The testimony produced is clear and convincing to this court from the examination of numerous witnesses that there was a continuous use by the Village of Brookville, from the very time of the original conveyance by Elgar Weaver to the Village of Brookville, and its acceptance thereof by the Village of Brookville for park purposes, up until and after the reconveyance by council for the Village of Brookville back to Elgar Weaver on April 19, 1938. The Village was in possession of and a continuous user of said premises for the purposes named in the deed throughout the summer and fall of 1937 and part of 1938, after Weaver again assumed possession and control of said park. They used it for swimming purposes although it developed that the swimming pool that was there before the premises were deeded to the Village of Brookville leaked. The building thereon was used for dances, very often, one man testified he had played for the dances very often. Softball games, in an organized league, were played three times weekly, and a regular baseball diamond was laid out by the citizens of the Village and improved, not by the appropriation of money or with taxes paid, but work and money donated by the citizens and the Chamber of Commerce. This ball diamond had bleachers that seated about 250 people. This

was not used for a private enterprise, no charge was made, and it was for the entertainment of the residents of the Village and community. There were swings and a merry-go-round for children, which were used. Trap shooting equipment for clay birds was erected upon a part of this ground and used regularly. Different reunions, picnics and political gatherings were held there all during the 18 months the deed was in the name of the Village of Brookville, and the Girl Scouts and Boy Scouts worked there and met there.

The testimony shows clearly and convincingly it was improved by the Chamber of Commerce and various citizens in the community, either by use of money or volunteered services, to put the ball grounds in condition, to build as many as five fireplaces and ovens, and the Dayton Power and Light Company, at the instance and request of the Chamber of Commerce of Brookville, trimmed the trees and men and boys in the neighborhood cut up the tops of the timber and stored it away for the use of the Boy and Girl Scouts, and for fires at picnics and reunions, and that the Chamber of Commerce paid for the stretching of wires and electric lights and poles throughout the grounds to make it useful for park purposes.

As many as 6,000 people came to one picnic. It is upon this testimony the court determines there was a consistent user and there were no grounds or reason to abandon for nonusage. There is nothing in the record to indicate that the 70 acres, or any part thereof, could not be used for park purposes, or was unfit for said use. **Wheaton et al v. Fernenbaugh, 8 Oh Ap 182.** "Suspension of school for a period of three years in the school district in which the school property involved in the instant case is located does not constitute abandonment on the ground of nonuser."

The court finds by clear and convincing evidence that no one seemingly, but the members of council and the original owner, Mr. Weaver, knew of the transfer back to Weaver, or that the resolution, known as Ordinance No. 93, was passed, or that the deed was given.

Donovan and Ray Althouse purchased this property by warranty deed from Elgar and Elizabeth Z. Weaver for $7500 on the 29th day of July, 1942. They in turn deeded it by warranty deed to the plaintiffs, Robert Miller and Electa Miller for the sum of $8500 on the 16th day of March, 1945. The Millers have put improvements on this land costing about $11,500. They in turn sold, by warranty deed, on April 4, 1947, .686 acres to Lawrence E. Bowser and Marie Bowser for

$850. The Bowsers in turn improved the .686 acres by erecting a brick house costing them around $13,000.

It came to the knowledge of the Millers and Bowsers when they made application to the Brookville Building and Loan for a loan that something was wrong they couldn't get a loan. They each described it as a "clause" in either the title or deed, neither seemed to understand it. At any rate they each obtained their respective loans from the Brookville National Bank. Why the Brookville National Bank loaned money on these premises is not a matter of record in this case.

The Village council had notice as to the proper procedure, as evidenced by a letter from their attorney, Mr. Shively, telling them how they must proceed, under §§3698 and 3699 GC; that it required an ordinance and advertisement.

The court finds from an inspection of the deed from Elgar Weaver to the Village of Brookville that the grant is for park purposes and is without a condition subsequent and there is no clause in said deed that provided for a reversion to Elgar Weaver or his heirs or assigns, if said property could not be used for park purposes. or if the village council did not care to use it for park purposes any further, or did not care to improve it, or they violated any of the wishes or conditions expressed in said deed from Elgar Weaver to the Village, nor does the court find any condition or limitation in said deed. The deed has an habendum clause, "to have and to hold by the Village of Brookville, their successors and assigns," etc.

There is no provision therein for right of re-entry in the event the property is abandoned. In other words, there was no condition in this deed from Weaver to the Village of Brookville, that provided for reversion or forfeiture to Elgar Weaver or his heirs in any event, even including the abandonment of the land for park purposes.

Sec. 3698 GC of the State of Ohio reads as follows: "Lease or sale of corporate property. Municipal corporations shall have special power to sell or lease real estate or to sell personal property belonging to the corporation, when such real estate or personal property is not needed for any municipal purpose. Such power shall be exercised in the manner provided in this chapter."

Sec. 3699 GC sets out the procedure in leasing or selling of real estate: "Lease or sale of real estate; procedure. No contract for the sale or lease of real estate shall be made unless authorized by an ordinance, approved by the votes of two-thirds of all members elected to the council, and by the

board or officer having supervision or management of such real estate. When such contract is so authorized, it shall be made in writing by the board or officer having such supervision or management and only with the highest bidder, after advertisement once a week for five consecutive weeks in a newspaper of general circulation within the corporation. Such board or officer may reject any or all bids and re-advertise until all such real estate is sold or leased."

Ordinance No. 93 is approved by two-thirds or more of all members elected to the council. The testimony is clear that council appointed a Park Board of three. There is no testimony in the record to show that the Board or officer having supervision or management of such real estate approved the sale of said premises by his or their vote.

The clerk of council testified that there was no advertisement once a week· for five consecutive weeks in a newspaper of general circulation.

Nor is there any record where there were any other bids other than Elgar Weaver. This is the only section which prescribes the manner in which sale of corporate property shall be made.

In Kerlin Bros. Co. v. Toledo, 8 Ohio N. P. 62, the Attorney General of the State of Ohio, as reported in 1928 O. A. G. 2925, in issuing an opinion says: "A municipality may not convey to the State for the use of the Department of Agriculture as a fish hatchery, lands owned by said municipality except in pursuance to advertisements and sale to the highest bidder under §3699 GC."

Sec. 3713-3 GC authorizes the conveying of land owned by a municipality to the United States government, without advertising, and this is the only section of General Code which permits execution and delivery of a deed without advertising.

Referring to 16 American Jurisprudence, Article 16, under "Contractual Analogies" and "Dedication Generally" it is held: "Neither a written grant nor any particular words or ceremonies, or form of conveyance, are necessary to render the act of dedication of land to public uses effectual at common law. Anything which fully demonstrates the intention of the donor and the acceptance by the public works the effect. Words are unnecessary if the intent can be gathered from other sources. It is sufficient if the owner's intention and express act coincide; dedication will then be effective immediately on its acceptance by the public."

Under Article 49, at page 375 of 16 American Jurisprudence, under the subject of "Withdrawal": "In general, the proprietor

may revoke or withdraw his offer of dedication, in whole or in part, at any time before it is accepted by the public or its representatives and before the rights of private persons have intervened."

It is held in **First Presbyterian Church of Salem, Appellee v. Tarr et al., Appellants 63 Oh Ap 286, 26 N. E. 2d 597,** and decided November 1, 1939: "A devise of real estate to a religious society 'to be used as a parsonage,' but with no provision for forfeiture or reversion, conveys all of the estate the testator had therein to the devisee, and the failure of the devisee to use the property as a parsonage will not cause the title to revert to the heirs of the testator."

In **Larwill v. Farrelly, 8 Oh Ap 356,** an opinion was expressed as follows: "The use in a deed of general warranty of the words 'for the use and sole purpose of the Catholic church and such other erections as may be needed for the use of said Catholic Church', does not constitute a condition subsequent or engraft a limitation upon the title, but at most is a mere suggestion or unenforceable request or desire."

In **First New Jerusalem Church of Lakewood, Appellant, v. Singer et al., Appellees, 68 Oh Ap 119, 34 N. E. 2d 1007, 1009,** in quoting from **In re Copps Chapel Methodist Episcopal Church, 120 Oh St 309, 166 N. E. 218,** it is held: "Where a quitclaim deed, for valuable consideration, conveys to trustees of an unincorporated church association certain real property, 'to have and to hold * * * unto the said grantees and their successors * * * so long as said lot is held and used for church purposes', without any provision for forfeiture or reversion, such statement is not a condition or limitation of the grant. Since the deed contains no provision for reversion or forfeiture, all of the estate of the grantor was conveyed to the grantees."

The fourth syllabus in First New Jerusalem Church of Lakewood v. Singer, reads: "Such a deed conveying the land to the 'trustees * * * and their successors in office forever, to be held in trust' for the church, and providing that the 'land is to be returned to the original owners' in the event that it should ever cease to be used for church purposes, conveys an absolute fee-simple title to the trustees."

Syllabus five reads: "In such case, the grantors must, in order to create a reverter or forfeiture of the estate reinstating the fee in them or their heirs, use words in the reverter clause of equal dignity and force to those of the grant, embodying the conception of perpetuity and succession."

Quoting from **First Presbyterian Church of Salem v. Tarr,** **63 Oh Ap 286,** 26 N. E. 2d 597:

"To create a condition in a grant, apt and appropriate words ought to be used, or a right of re-entry be reserved; a mere expression of purposes for particular uses to which the property is to be appropriated is not sufficient, * * *.

"A condition will not be raised by implication from a mere declaration or recital in an instrument that the grant is made for a particular or certain purpose, unless it is coupled with words clearly showing upon their face such a condition, such as words indicating that the grant is to be void and the property to revert if the declared purpose is not carried out. The most that can be claimed for such recitals or statements is that they might be construed as the expression of a mere wish or desire on the part of the grantors to have the property used for the purposes indicated; but in effect they are mere suggestions, unenforceable requests, or desires.

"Conditions which in any way have a tendency to destroy or lessen estates are not favored by the law; such conditions are strictly construed, and all doubts are resolved against them in such way as to save the grant, and not to defeat it, even, it is said, to an extent hardly reconcilable with conscience, because on the breach of such conditions there is a forfeiture, and the law is adverse to forfeitures."

In Commissioners of Mahoning County v. Young et al., 59 F. 96, 9 Ohio F. Dec. 202, it is held: "Condition subsequent, in a deed, when relied upon to work a forfeiture of a vested estate must be created by expressions or implications so clear that there can be no doubt of the intent of the grantor, and the mere expression of a purpose or particular use to which property is to be appropriated will not make the estate conditional."

The **City of Cleveland v. Herron, 102 Oh St 218,** 131 N. E. 489, holds:

"Failure of the grantee to perform a promise which formed the whole or part of the consideration for the execution of a conveyance gives rise to no right of rescission in the grantor, where such failure was not expressly made a ground of forfeiture.

"Where a conveyance of real estate for park and boulevard purposes is made to and accepted by a municipality, the stated consideration whereof was the sum of $3,000, which was paid, and the promise of the municipal authorities to improve said

tract in the respects recited in the deed, 'all of which shall be done as regards both manner and material pursuant to the direction and discretion of the board of public service * * * as rapidly as possible,' and pursuant thereto a large sum of money is thereafter expended, the proposed improvement not being at any time abandoned, the grantor will not be awarded a decree of cancellation and rescission of the conveyance for delay in the prosecution and completion of such improvement, particularly where no ground of forfeiture is stated in the conveyance."

Counsel for plaintiff seems to lay great stress on the abandonment by the Village of Brookville for the uses and purposes expressed in the deed and the fact that there is a conditional limitation as expressed in the habendum clause in said deed.

The court has examined all the authorities cited, and others, on the subject of habendum clause, conditions and uses expressed in the habendum clause of deeds, and is of the opinion that there is no condition or limitation expressed in the deed in question which would even suggest the conditional limitation that would subject it to a reverter. Had there been it would not only have been proper for Mr. Weaver, upon abandonment, had there been an actual abandonment of said property for park usage, to appeal to a court of equity and upon presentation of the required amount of evidence upon the subject, and have the property decreed to him upon the grounds counsel for plaintiff claims.

It also seems that the above cited cases indicate had there been a forfeiture clause in the deed from Weaver to the Village of Brookville upon breach of certain conditions or abandonment, that he would have to go to the courts to get his relief, and that the council, in no case, should by an ordinance or resolution, determine there is abandonment of property deeded to them, and deeded to them for a specific purpose, then deed it back without an order of a court of equity. But there was no such clause in the deed from Weaver to the Village of Brookville.

It is suggested by counsel that there has been abandonment after the attempted reconveyance by the members of council back to Elgar Weaver for a period of ten years as a nonuser. It is the opinion of the court that testimony indicates that there was a user after Weaver dispossessed the citizens of the Village of Brookville when he received the purported deed back and that when they attempted to have the picnic and

to use the ball diamond they found the outfield plowed up and later on the entrance to the park barred to the use of the public. It is the opinion of the court that the possession of Weaver and his purported successors in title is an adverse possession for the past ten years other than abandonment.

The Supreme Court of the State of Ohio, in **State ex rel. v. Shriver, 113 Oh St 171,** 148 N. E. 697, recognizes the fact that a village council, in order to sell real property not needed for municipal purposes, must have the approval of the Board or officer having supervision or management of the project, and will be required to pass an ordinance and advertise in accordance with §§3698 and **3699 GC** of the State of Ohio.

That is relied upon in 39 Attorney General's Decision, 758, and in Weinland on Municipal Corporations in Ohio, §3699 GC page 203 and 204, as follows:

"The formalities required by the statutes for the sale of property of a city must be strictly complied with Kerlin Bros. Co. v. Toledo, 20 Ohio Cir. Ct. R. 603." "A contract by a city which is void because bid was not advertised for imposes no liability on the city. **Wellston v. Morgan, 65 Oh St 219,** 62 N. E. 127." Therein the Supreme Couurt recognizes a contract for the sale of real property by the city is void for want of advertising and proceeding by law. "No estoppel from the acts of city officers can arise to cure an omission to advertise. **Lancaster v. Miller, 58 Ohio St. 558,** 51 N. E. 52." "Sale at auction is authorized by this section, but employment of an auctioneer is not authorized. **State ex rel. Zielonka v. Carrel, 103 Oh St 50,** 132 N. E. 161." "Council must proceed under this section where a part of the property sold is real estate." Referring to what is now §3699 GC. Kerlin Bros. Co. v. Toledo, 8 Ohio N. P. 62. "Under this wording of the law, the contract for sale must be made with the highest bidder. **Beaver v. Trustees of Institution for Blind, 19 Oh St 97; Boren v. Darke County Com'rs, 21 Oh St 311.**" "Provisions as to advertising for bids are designed for the protection of the tax payer and are preemptory. **Upington v. Oviatt, 24 Oh St 232.**" "And advertisement for less than the statutory period would render the sale void. **McCloud v. Columbus, 54 Oh St 439,** 44 N. E. 95." See also Fenner v. Cincinnati, 8 Ohio N. P. 340, 342; Gilfillin v. Koke, 1 W. L. M. 704; Harmon v. Whittemore, 1 Bull 109; Early v. Doe, 16 How. 610, 14 L. Ed. 1079; **Merves v. Lorain, 32 Abs 417;** See steps necessary under §3699 GC as set out on page 205, in Wineland on Municipal Corporations.

Counsel for plaintiffs rely upon Burdette v. Jones, Ohio Com. Pl., 72 N. E. 2d 152, 34 O. O. 488, decided January 30,

1947. The court says: "The granting clause of a deed to a Board of Education which 'bargained and sold, and by these presents do grant and convey to the party of the second part, its successors and assigns, as long as the same shall be used for school purposes,' conveys a base, or qualified or determinable fee only, which is terminable upon the abandonment of the property for school purposes although there is no provision for forfeiture or reversion, and the original owners of the property, their heirs or assigns have an immediate right of entry on abandonment of the property for school purposes."

The court has no criticism with that decision because there is apparently a qualified or determinable fee expressed in that deed, so much different from the deed given by Elgar Weaver to the Village of Brookville.

This question is discussed in **Schurch et al. v. Harraman, 47 Oh Ap 383,** 191 N. E. 907, at length; and also in Thompson on Abstracts of Title, Section 43.

And again the Board of Education of Rush Township, Tuscarawas County went to the courts and asked for a declaratory judgment and for instructions as to how to proceed and what to do. That was not done by the village council in this case.

It is, therefore, the opinion of the court that Elgar Weaver in his deed to the Village of Brookville granted all the right, title and interest he had in said premises to said village. There is no provision of reverter in said deed, and there is no determinable fee that can in any way whatsoever be read into the language in said deed. There is no limitation whatsoever in the usage, except as to intoxicating liquor, and there is no alleged breach of that restriction.

The court finds, by clear and convincing evidence there was no abandonment of usage, except as to the action of council, and all the testimony indicates there was a constant and continuous usage and improvement by the citizens of the community, for whose benefit it was deeded in the first place, and that the deed from the Village of Brookville back to Elgar Weaver in April, 1938, was without authority and contrary to the provisions of the law as set out in §§3698 and 3699 GC, and it follows that Elgar Weaver had no right, title or interest to convey to the Althouses, nor the Althouses to Miller, nor Miller in turn to Bowser. The deed from the Village of Brookville to Elgar Weaver dated April 10, 1938, is void.

It is the opinion of this court that this court has no power under the state of the pleadings in this case to determine the right of the respective owners under the occupying claimant's

law, or the right of the respective owners as against the estate of Elgar Weaver, under the warranty in his deed to the Althouses or Althouses in their warranty deed to Miller, and Miller in his warranty deed to Bowser.

It is suggested that estoppel will deny the Village of Brookville from recovering from the present occupancy of the premises, citing **Markley v. Village of Mineral City, 58 Oh St 430, 51 N. E. 28, 65 Am. St. Rep., 776.** It seems that the Supreme Court, in deciding that case, decided that the village was estopped from claiming from Markley on the ground that they had no right to acquire property for the purpose of giving it away to a private corporation on a private person for the purpose of establishing a factory or a business, and since it was unlawful for them to acquire property for that purpose the deed in the first instance was void.

Now in the instant case of Miller v. Village of Brookville, the Village did have authority to acquire property by deed from a private party for park purposes, and the law defines how they shall dispose of that property when they once acquire it. However, the recovery of the property is not before the court. The court has held the deed is void from the Village of Brookville to Weaver. If the deed is void the title to the property never passed. If its present occupants are holding by adverse possession then they haven't had adverse possession for a sufficient length of time in order to obtain title thereby.

The question before the court is whether or not the court can quiet the title of the present owners of the 75-acre tract. The court is of the opinion that for the reasons above given that cannot be done. Counsel will draw their entries accordingly.