FARIS ET, PLAINTIFFS, *v.* YOUNG ET, DEFENDANTS.

Common Pleas Court, Meigs County.

No. 12021.   Decided June 4, 1964.

*Mr. Manning D. Webster*, for plaintiffs.
*Mr. J. B. O'Brien*, for defendants.

BACON, J.  This case came on for hearing upon the pleadings, stipulations and exhibits, and the testimony, Manning D. Webster appearing for plaintiffs, J. B. O'Brien appearing for defendants.  Petitioners seek to quiet title to 39/100 of an acre, described by metes and bounds in a deed executed by George and Nellie Jay to O. R. Faris and R. W. Schwegman February 8, 1921, recorded Meigs County Deed Book 122, page 252, February 15, 1921.

Following the metes and bounds description, the deed recited as follows:

"The intention of this deed is to convey sufficient ground for the purpose of establishing ingress and egress to coal mine, erecting tipple, hopper, trestle as well as sufficient ground to enable automobile trucks to enter and for exit to mine and coal hopper that is to be erected upon said premises."

The conveyance was upon a warranty deed form printed by the W. H. Anderson Co., Cincinnati, Ohio, with no provisions for forfeiture or reversion, and conveyed:

"all the Estate, Title and Interest of the said George Jay and Nellie Jay, either in Law or Equity of, in and to the said premises; Together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof; To Have and to Hold the same to the only proper use of the said O. R. Faris and R. W. Schwegman their heirs and assigns forever."

The deed also provided for the usual warranty by the grantors.

Subsequent to this conveyance George and Nellie Jay conveyed the parcel, from which the 39/100 of an acre had been surveyed, to H. C. and Dora M. Bearhs, by warranty deed of November, 11, 1929, recorded Meigs County Deed Book 132, page 542, November 29, 1929. This deed, however, reserved all right to the minerals to the grantors, George and Nellie Jay, and specifically made the following exception:

"Except also thirty-nine one-hundredths of an acre more or less heretofore sold by Grantees to *Thel* Faris for the purpose of *est*ablishing ingress and egrees to coal mine, erecting tipple, hopper, *tressel*, as well as sufficient ground to enable automobiles, trucks, to enter and for exit to mine and coal hopper dated February 8, 1921, recorded Vol. 122, page 252, Record of Deeds.

This same exception was recited in the deed from H. C. and Dora M. Bearhs to Charles and Anna Shiveler, dated April 15, 1930, recorded in Meigs County Deed Book 136, page 14; also in the affidavit of transfer recorded in Deed Book 147, page 344, showing Charles Shiveler as Anne's sole heir at law; and also in the deed from Charles Shiveler to Dana C. Young dated December 2, 1940, recorded Deed Book 145, page 625.

The testimony of Dana C. Young discloses that he makes no claim to the 0.39 of an acre by adverse possession. It was never

fenced and apparently no actual use of the land in question has been made by anyone for many, many years. Mr. Young did express the fear that any use of the 0.39 acre might endanger his private roadway used as ingress and egress to his home.

His testimony refutes the averment in his answer that he was in actual possession of the 0.39 acre tract. In fact, he testified that at one time there had been a fence between his private roadway and the parcel conveyed by George and Nellie Jay to O. R. Faris and R. W. Schwegman.

The interrogatories submitted to George Jay, the court admitted under the agreement of counsel, and admitted the answers over the objection of counsel for plaintiff.

George Jay in answering the interrogatories, four times averred it was his belief that he never made a deed to O. R. Faris and R. W. Schwegman of the 0.39 acre tract. But, he was frank to admit that "the deed record will speak for itself." And indeed the deed record does speak for itself.

Plaintiff's Exhibit 3, the original of that deed record, admitted without objection, includes the memorandum prepared on the letterhead of Leo. J. Byrne, Surveyor of Meigs County, Pomeroy, Ohio, with the metes and bounds description of 0.39 acre more or less, concluding,

"It is the intention of this deed to convey such land as is necessary for inlet and outlet to coal Tipple and Openings."

This memorandum was placed in the hands of the late O. H. Stewart, a local attorney with a reputation for drafting good conveyances.

Plaintiff's Exhibit 3 discloses that immediately prior to its delivery to the Meigs County Recorder, it was indorsed "Transferred Feb. 15, 1921, W. S. Hart, County Auditor."

The Auditor's Transfer Record at Vol. 11, page 325, reveals the transfer transaction as follows:

"Date transferred: Feb. 15, 1921. In Whose Name Taxed: George Jay. Grantors: George Jay and Wife. Description: NW Part of 18 A., W. part of SE 37½ A. Consideration in Deed: $1. and other. To Whom Transferred: O. R. Farris & R. W. Schwegman. Kind of Title: Warranty. Remarks: Value $50."

This transfer appears upon the Auditor's Tax Duplicate for the year 1920, Vol. 3, page 19, line 7, where 18 acres listed

in the name of George Jay is described in Range 13, Town 2, Section 9/15 Lot 262, Subdiv. 2. The acreage 18 is lined out in red ink, and substituted just above, also on line 7, in red the figures "17.61." To the right of the valuation in red ink are the names "Farris & Schwegman."

The current Treasurer's Duplicate discloses that the defendant, Dana Young, is paying taxes on 17.61 acres, the same lands of George Jay after the transfer from Jay's name of 0.39 acre.

The County Treasurer's Tax Duplicate discloses that January 17, 1964, O. R. and Henrietta Faris paid taxes on 0.39 acre described as "NW part of 18 A. W. part of SE 37½ A. valued at $20. This contradicts George Jay's averment that he paid the taxes on the 0.39 acre parcel.

The defendant, Dana Young, testified that he recalled improvements erected upon the 0.39 acre tract for use in connection with coal mining. This contradicts George Jay's answer to the interrogatories:

Q. Did you transfer possession of this 0.39 acre to O. R. Faris & R. W. Schwegman?

A. Not to my recollection.

Q. Did O. R. Faris & R. W. Schwegman ever claim possession or the right to possession of the 0.39 acre?

A. No.

George Jay avers he was paid $125. in 1921 for the parcel. Considering the U. S. was taken off the gold standard, and considering the inflations of the '30s, the '40s, the '50s and '60s, this sum would be equivalent to $500. today.

Today's assessed valuation of $20 with the fact of nonuse indicates its real value lay in the purpose for which Faris and Schwegman acquired it. But the fact that such purpose was expressed in the deed, did not diminish the fee simple title the grantees received. Certainly that is the law, where, as here, the deed fails to provide for forfeiture, reentry or reversion to the grantors.

This principle is so well settled only limited reference is made to the authorities.

Judge Houck for the unanimous Court of Appeals of Wayne County, in *Larwill* v. *Farrelly*, 8 Ohio App., 356, 28 O. C. A.,

305, 30 O. C. D., 196, succinctly states cogent reason why plaintiffs must succeed in the instant action.

"A condition will not be raised by implication from a mere declaration contained in an instrument that the grant is made for a particular or certain purpose, unless it is coupled with words clearly showing upon their face such a condition.

"In a warranty deed, such as the one now before us for construction, which contains the usual words of warranty and alienation of title of grantors, the law presumes that all of the grantor's title and interest in the real estate described in said instrument passes to the grantee, unless by some plain language used therein the contrary is shown.

"Conditions which in any way have a tendency to destroy or lessen estates are not favored by the law, and thus are strictly construed, and all doubts are resolved against restrictions.

"While it is true that no precise form of words is necessary or essential to create a condition subsequent, nevertheless, if in a deed, it must be created by such terms as to leave no doubt of the intentions of the grantor so to do.

"The language used by the grantors in the deed in the case at bar is clear, plain and unambiguous, and there is no doubt about its meaning, but, as we interpret and construe it, falls far short of being sufficient to create a condition subsequent.

"Courts, in construing deeds and like written instruments, must be guided by the intention of the parties to them, and this must be determined by the language used in the instrument, the question being not what the parties meant to say, but the meaning of what they did say, as courts can not put words into an instrument which the parties themselves failed to do."

The syllabus of the *Larwill case* affirms a principle even then well settled in Ohio real estate law:

"The use in a deed of general warranty of the words, 'for the use and sole purpose of the Catholic Church and such other erections as may be needed for the use of said Catholic Church,' does not constitute a condition subsequent or engraft a limitation upon the title, but at most is a mere suggestion or unenforceable request or desire."

One could well remark that the instant grantor, George Jay, recognized by his testimony, "No, I do not recall that

I did but the deed record will speak for itself, . . ." the legal principle stated in Syllabus 1, *Guida* v. *Thompson*, 80 Ohio Law Abs., 148, 160 N. E. (2d), 153.

"At law, a deed is conclusively presumed to express the intention of the parties, and the court must seek for the real meaning intended to be expressed by the language used in the deed; the question being not what the parties meant to say, but the meaning of what they did say."

An extremely strong case for the proposition that a grant reciting use and purpose without provision for forfeiture or reversion is at most a mere suggestion or unenforceable request or desire can be found in *Miller* v. *Village of Brookville*, 54 Ohio Law Abs., 193, affirming opinion by Chief Justice Weygandt, 152 Ohio St., 217, 89 N. E. (2d), 85, 15 A. L. R. (2d), 967.

Although three enumerated restrictions plus five requests of the Village are recited in a deed made to the Village for park purposes, the Village still acquired a fee simple title. Why? No provision made for forfeiture or reversion. The deed even recited:

"This conveyaynce is made to be and is in perpetuity for a park and pleasure ground purposes, and the foregoing restrictions shall be enforceable by injunction by the grantors, their heirs or assigns, or any citizen of the community who may be interested in the welfare of the park."

The Village, having no funds to maintain the facility, and wary of liability for injuries possibly incurred by users of the park, by Ordinance, and deed pursuant thereto, reconveyed the premises to the donor. The donor sold the premises by warranty deed for $7500 and subsequent purchasers erected improvements valued at nearly $23,000.

These new equities were likely responsible for the dissenting opinion, 152 Ohio St., 224. But Judge Hart laid stress upon the lack of consideration, as is seen by his language, page 226.

"Under what principle of law and justice would a municipality be justified in selling a parcel of real estate acquired as a gift but with obligations attached to its possession and use, with which obligations it was unable to comply, and in which property the municipality never invested any sums on its own account."

In the instant case, Faris and Schwegman paid a valuable

consideration, and indeed Mr. Faris affixed an Internal Revenue stamp for $.50 upon the deed.

The court has examined authorities cited by counsel for defendants. Their facts hardly apply to this case. *Stove Co.* v. *Railway*, 34 O. C. D., 236, 23 O. C. C. ns, 260, involved adverse possession.

In *May* v. *Board of Education*, 12 Ohio App., 456, the deed included the following clause:

"The above described premises to be used for a schoolhouse site and if used for any other purpose than for schoolhouse and school purposes said premises will revert back to said Henry May, his heirs or assigns."

In *Wolfe* v. *Scarborough*, 2 Ohio St., 361, the grantor subdivided his lands into 13 Lots by a paper plat, without actual survey. The grantor owned, however, 4,100 acres instead of 4,000 acres as he had supposed.

In his brief counsel for defendant makes several assumptions of fact, not borne out by the evidence, "Faris never claimed ownership after the coal was mined and the land abandoned by the operators of the mine,"—"O. R. Faris and R. W. Schwegman accepted the construction of the conveyance in their deed of 1921 from George Jay and used the property for uses stated and after these uses, made no claim to title." —"Actually, the original grant was an easement for a specific use while it was in the form of a deed."

In truth the grant was not merely in the form of a deed, it was a deed! George Jay and wife did grant, bargain, sell and convey to the grantees, their heirs and assigns forever. The grantors stated it was their intention "to convey sufficient ground" for the enumerated purposes, and "all the Estate, Title and Interest of the said George Jay and Nellie Jay either in Law or Equity, to have and to hold the same to the only proper use of the said O. R. Faris and R. W. Schwegman, their heirs and assigns forever," and concluded with the usual convenants of warranty.

Apparently the 0.39 acre parcel is today of little use, as evidenced by its tax value, $20, and further that it was never fenced, tilled, nor improved other than for coal mine use. The only manifest claim of ownership in evidence following cessation of coal activities was that made annually or semi-annually

254

by O. R. Faris and R. W. Schwegman, and the latter's successors in title—the payment of taxes.

It would seem that exceedingly lengthy opinion has been rendered upon what is apparently 0.39 acre of wasteland. But the parties by prosecuting the case to trial indicated its importance to them, and real estate law is interesting and instructive.

Counsel are directed to prepare a decree quieting title as plaintiffs pray for in their petition.