[No. 27481-3-I.   Division One.   October 5, 1992.]

TERENCE BUTLER, ET AL, *Respondents,* v. CRAFT ENG
CONSTRUCTION COMPANY, INC., *Appellant.*

*Meredith A. Copeland* and *Betts, Patterson & Mines P.S.; Janice C. Albert,* for appellant.

*Jordan M. Hecker* and *Hecker & Feilberg, P.S.,* for respondents.

KENNEDY, J. — Craft Eng Construction Company appeals the trial court's grant of a permanent injunction in favor of respondents Butler and Lee and the court's failure to quiet

title to Craft Eng's undivided fee ownership interest of record in a commonly owned private road. The injunction prevented Craft Eng from using the road for ingress and egress for two of the three homes which Craft Eng planned to build following Seattle's approval of a short platting of its property. We reverse the trial court and dissolve the injunction. We remand for disposition of Craft Eng's request to quiet title, in light of this opinion.

## PROCEDURAL HISTORY

In 1989, Craft Eng obtained approval from Seattle's Department of Construction and Land Use (DCLU) to subdivide its property from two lots into three. This decision was appealed by the respondents Butler and Lee.[1] A hearing examiner affirmed DCLU's decision. The hearing examiner found that each of the three single family residences which Craft Eng proposed to build could generate 10 additional vehicle trips per day on the commonly owned private road. The hearing examiner concluded that this constituted no more than a minimal adverse environmental impact on parking, traffic and noise and that the additional traffic would not affect the stability, safety and character of the private road. The hearing examiner also determined that the opening of unopened N.E. 130th Street was not a reasonable alternative means of access to Craft Eng's proposed development, in that the opening of N.E. 130th Street would require the destruction of many large evergreen and deciduous trees and other vegetation growing within the right of way. Moreover, because of that unopened street's steep slope, the hearing examiner concluded that substantial grading would be required which could undermine the stability of the hillside and thereby endanger downhill residences and properties.[2]

---

[1] Two other neighboring landowners, Maloney and Durran, joined in the appeal from DCLU's decision but were not parties to the subsequent proceedings in superior court.

[2] The hearing examiner also affirmed DCLU's determination that the improvement of the private road, which Craft Eng was required to make as a condition of the approval of the short plat, would alleviate the neighbors' concerns about safety, traffic and parking.

The hearing examiner determined that she did not have jurisdiction to determine the other issues raised by the objecting neighbors, *i.e.*, whether only parcel A of the proposed short plat would have a legal right to use the private road at issue here and whether Craft Eng's plan to use the road to provide access for parcels B and C of the proposed short plat would be a breach of the objecting neighbors' ownership interest in the road as tenants in common or of their rights as grantees under existing easement documents.

Without seeking any review of the hearing examiner's findings and conclusions, Butler and Lee filed suit in superior court, seeking declaratory and injunctive relief. The parties stipulated to a trial by affidavit. In its trial brief, Craft Eng requested, but without any formal request to amend its pleadings, to quiet title to its "undisputed" interest, as a tenant in common, in the private road which is at issue here.[3]

Following the trial by affidavit, the trial court issued a written memorandum decision in favor of Butler and Lee on their request for a permanent injunction. Craft Eng then filed a motion for reconsideration. The trial court entertained the motion and additional briefing was submitted, as were additional affidavits. After additional argument, the trial court denied the motion for reconsideration. The court's formal findings, conclusions and a permanent injunction enjoining Craft Eng from using the private road for access to any other parcel in its short plat, except parcel A of the short plat, were entered on November 1, 1990. In view of the permanent injunction, the trial court apparently found it unnecessary to rule upon Butler's and Lee's request for declaratory relief extinguishing Craft Eng's ownership interest of record in the road and upon Craft Eng's request to quiet title.[4] This appeal followed.

---

[3]Although Craft Eng referred to its ownership interest in the road as "undisputed", in their complaint, Butler and Lee sought to extinguish Craft Eng's interest of record, or, alternatively, to limit that interest for use by parcel A of Craft Eng's proposed short plat. Prior to trial, both sides sought summary judgment as to their respective positions. Both sides' motions for summary judgment were denied.

[4]Butler and Lee have now abandoned their request to extinguish Craft Eng's interest of record and take the position in this appeal that Craft Eng's ownership

UNDERLYING FACTS

Commencing in or about 1941, Pope & Talbot, Inc., began to convey certain property in the neighborhood at issue here to the historical predecessors of the parties now before us. In order to clarify the issues on appeal, two illustrations are necessary.

Illustration 1, set forth immediately below, shows Pope & Talbot's initial conveyances between 1941 and 1952:

Illustration 1

On October 3, 1945, Pope & Talbot, Inc., executed two warranty deeds to Rantz. In "Deed 1", Pope & Talbot conveyed that portion of tract 11 shown on the lefthand side of illustration 1, together with an undivided one-third fee interest in the roadway shown. Deed 1 stated that the metes and bounds description which constituted the roadway was conveyed "for road purposes". In "Deed 2", Pope & Talbot conveyed that portion of tract 11 shown on the righthand side of illustration 1. Although the record for this appeal does not reflect when Rantz acquired tract 12 shown on illustration 1, by October 1962, when Rantz sold all of his interest in tracts 11 and 12 to Mathison, together with

interest of record in the roadway is limited to the right of ingress and egress for parcel A of Craft Eng's short plat.

an undivided one-third fee interest in the roadway, the "old Rantz home" shown on illustration 1 was located on tract 12.[5] The record also indicates that, although there is a short driveway from 42nd Avenue N.E. leading to the "old Rantz home", both Rantz and Mathison utilized the private road to reach the remainder of tracts 11 and 12 during all of their respective ownerships of the property. Rantz kept a woodshed and hen house on the western portion of tract 12, which he allegedly accessed by means of the private road.[6]

In or about 1941, Pope & Talbot issued a real estate contract to Harp for the sale of the large western portion of tract 10 shown on illustration 1, together with an undivided two-thirds fee interest in the private road.[7] As did the deed to Rantz in 1945, the real estate contract to Harp described the roadway by metes and bounds and stated that the conveyance was "for road purposes". The real estate contract was not recorded.

By February 15, 1952, that portion of tract 10 shown in the upper right hand corner of illustration 1 was owned by Heins. Heins had no ownership interest in the private road. On February 15, 1952, Rantz, Harp, Pope & Talbot and Heins executed a "Grant of Easement" whereby it was recognized that Heins was using the private roadway for ingress and egress and that Harp's real estate contract was unrecorded. The easement stated that,

it is the desire of all the parties hereto that the respective rights of the said owners and purchasers of said Parcels A, B

---

[5]Respondent's brief indicates that Rantz owned tract 12 by February 15, 1952. There is at least an inference in the record that Rantz already owned tract 12 by the time he purchased tract 11 in 1945.

[6]Mathison, Craft Eng's immediate predecessor, stated in the affidavit that he personally observed the woodshed and hen house and that he personally used the roadway to reach the westernmost portions of tract 12. Mathison's statements that Rantz also used the road for that purpose are hearsay.

[7]Harp also was purchasing under the same real estate contract the north 40 feet of tract 11 which was contiguous to his tract 10. For convenience illustration 1 treats those north 40 feet as if they were part of tract 10.

and C to the use of said [roadway] for ingress and egress and for roadway purposes be established of record.[8]

In addition to giving recognition to Heins' use of the roadway and to Harp's undivided two-thirds vendee's interest in the roadway, each of the parties to the 1952 easement granted reciprocal easements to each other "for ingress and egress and for such purposes as roads are ordinarily used, over, upon and across said [roadway]." The document also stated, "[t]he easements hereby granted are hereby made appurtenant to the property benefited thereby." There is no language in the easement indicating that it was to be an exclusive easement or which would affirmatively restrict the rights of the owners and purchasers of the undivided fee interest in the roadway to continue to utilize the roadway "for road purposes", as stated in their respective documents of title.

In 1980, Harp sold his entire parcel, together with his undivided two-thirds fee interest in the roadway, to Wallace. A year later, Wallace conveyed that same property to Heindel. In 1982, Heindel short platted this property into two lots. He later sold one of the lots to Camus "[together with] an easement for ingress [and] egress", over the roadway. Heindel sold the other lot to Lindberg "together with an undivided ⅓ interest" in the roadway. The respondent Lee eventually purchased the lot acquired by Camus, in 1988. The conveyance to Lee was made "together with a ⅓ undivided interest in an easement for ingress [and] egress" over the roadway. The respondent Butler eventually purchased the lot acquired by Lindberg, in 1986. The conveyance to Butler was made together with "an undivided ⅓ interest" in the roadway.

As earlier indicated, in 1962, Mathison purchased the entirety of Rantz' interest in tracts 11 and 12, together with an undivided one-third interest in the roadway. Mathison subdivided tracts 11 and 12 into four lots in 1979. In April

---

[8]Parcel A refers to Heins' property; parcel B refers to the property being purchased by Harp from Pope & Talbot by the unrecorded real estate contract; parcel C refers to that portion of tract 11 conveyed to Rantz by deed 1 on October 3, 1945.

1989, Mathison sold one of his lots which bordered on 42nd Avenue N.E. to Rainier Construction, Inc. Although that deed purported to convey all or some unspecified share of Mathison's undivided interest in the roadway, Mathison submitted an affidavit for the trial in which he testified that this was error — because the lot sold to Rainier borders on 42nd Avenue N.E., Mathison had not intended to convey any interest in the roadway to Rainier.

In June 1989, Mathison sold his two westernmost lots to Craft Eng. With each of those lots, Mathison conveyed an undivided one-sixth fee interest in the roadway. Craft Eng subsequently subdivided the two lots into the three lots, parcels A, B and C, which were approved by DCLU in 1989.

After the lawsuit which is the subject of this appeal had been commenced, Craft Eng conveyed an undivided one-twelfth fee interest in the roadway to Rainier and Mathison and Rainier conveyed an undivided three-twelfths fee interest in the roadway to Craft Eng "to correct [the] legal description".

The property which surrounds the roadway at issue, as owned and subdivided as of the time of trial, is illustrated immediately below.

Illustration 2[9]

## DISCUSSION

### I

#### STANDARD OF REVIEW

■ All of the evidence which was before the trial court was contained in written affidavits and in such written documents as deeds, easements and plat maps. In addition, the written findings and conclusions of the hearing examiner for the DCLU appeal, from which no appeal was taken, are dispositive of some of the issues which were before the trial court. There are no issues of witness credibility. Accordingly, we review the record de novo and exercise our own independent analysis of the same record as was before the trial court. *See Wilson v. Howard*, 5 Wn. App. 169, 176, 486 P.2d 1172, *review denied*, 79 Wn.2d 1011 (1971); *In re Estate of Reilly*, 78 Wn.2d 623, 654, 479 P.2d 1, 48 A.L.R.3d 902 (1970); *Danielson v. Seattle*, 45 Wn. App. 235, 240, 724 P.2d 1115 (1986), *aff'd*, 108 Wn.2d 788, 742 P.2d 717 (1987).

### II

#### INJUNCTION

■ Our Supreme Court has established three requirements for the granting of injunctive relief. One who seeks an injunction must show

> (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him.[10]

*Tyler Pipe Indus., Inc. v. Department of Rev.*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) (quoting *Port of Seattle v. Interna-*

purportedly was granted an easement over the roadway in 1959. The 1959 easement was not executed by all of the parties whose names appear upon it. Many of the signature lines are blank, including the signature line for Rantz. The 1959 easement, which was not recorded until 1978, stated that it was for the purpose of providing the right of ingress and egress to Maloney and it was made appurtenant to Maloney's property. The statutory warranty deed from Mathison to Craft Eng for the property referred to in illustration 2 as parcels A, B and C noted that the conveyance was subject to the 1952 and 1959 easements.

[10]This appeal turns on requirements (1) and (3). To the extent that Butler and Lee have any clear legal or equitable right, it is undisputed that there is a well-grounded fear of invasion.

*tional Longshoremen's Union,* 52 Wn.2d 317, 324 P.2d 1099 (1958)). In addition, equitable factors are to be considered before a decision is made. Since injunctions are addressed to the equitable powers of the court, the listed criteria "must be examined in light of equity including balancing the relative interests of the parties and, if appropriate, the interests of the public."[11] *Tyler Pipe,* 96 Wn.2d at 792.

Craft Eng contends that Butler and Lee failed to establish that they had any legal or equitable right to prevent Craft Eng from using the private road for ingress and egress to the three parcels in its short platted property, and, that in any event, Butler and Lee can show no actual and substantial injury.

## A. Clear Legal or Equitable Right

Both sides agree that the law to be applied in determining the parties' respective interests is the law relating to tenancies in common and not the law of easements.[12] Butler and Lee argue that a tenant in common may not subdivide its undivided fee interest without the consent of the other cotenants and that Mathison's attempt to split his undivided one-third interest into two undivided shares of one-sixth each, when he transferred the two westernmost lots of the Mathison subdivision to Craft Eng, must fail as a matter of law.[13] Butler and Lee argue that, because Rantz received his undivided one-third fee interest in the road in deed 1 issued on October 3, 1945, only the property conveyed in deed 1

---

[11]The hearing examiner for the DCLU appeal found that Craft Eng's proposed short plat "conforms to land use policies and codes and serves the public use and interest."

[12]Neither side has argued that, by conveying the roadway to Harp and Rantz "for road purposes", Pope & Talbot created only an easement, rather than an estate in land. Accordingly, as do the parties, we treat the conveyances as having created fee interests. *See* Restatement of Property § 471 (1944).

[13]Butler and Lee also argue that the transaction between Craft Eng and Rainier, whereby Mathison and Rainier conveyed an undivided three-twelfths interest to Craft Eng and Craft Eng conveyed an undivided one-twelfth interest to Rainier, must fail as a matter of law.

together with the interest in that roadway has the right to use the road for ingress and egress — the property now described as parcel A of Craft Eng's short plat.[14] To the extent that Rantz' grantor may have had any other intention, Butler and Lee argue that the 1952 grant of easement, which referred only to the property conveyed to Rantz in deed 1, indicated an intention of the parties to that easement to delineate the parcels to be benefited by the subject road. We will examine these contentions in turn.

1. Ability of a Cotenant To Convey.

A tenant in common has a separate, undivided interest which is descendible and which may be conveyed by deed or will. Moreover, a tenant in common may further subdivide its interest into as many fractional parts as it pleases and convey to as many grantees as it wishes. 2 *American Law of Property* § 6.10, at 46 (A. Casner ed. 1952). However, in making such a conveyance, it is the general rule that a cotenant may only convey its undivided interest or some undivided fraction thereof. It may not attempt to transfer its interest by metes and bounds, without the consent or subsequent ratification of the other cotenants, for such would interfere with the other cotenants' right of partition. *American Law of Property* § 6.10, at 46-47.

Washington law is in accord. *See de la Pole v. Lindley*, 131 Wash. 354, 357-58, 230 P. 144 (1924) stating that one tenant in common may lawfully lease, sell or otherwise dispose of its interest in the common property, without the consent of the other cotenants. The rule is that each cotenant is entitled to the use, possession and benefit of the whole of the property. The only limitation is that a cotenant may not interfere with the coequal rights of the other cotenants. *De la Pole*, 131 Wash. at 358. *See also Jones v. Berg*, 105 Wash. 69, 80-86, 177 P. 712 (1919) (a case upholding a cotenant's subsequent ratification of another cotenant's grant of an easement so as to encumber a specific portion of the lot).

---

[14]Butler and Lee thus appear to equate the grant of an estate in land with the grant of an easement, as if there were no legal difference between the two.

In addition to the normal rules of cotenancy, we are mindful of the restricted use to which the co-owned roadway at issue here may be put. The property was conveyed to the initial cotenants, their heirs and assigns, for road purposes, and certainly subsequent to the 1952 grant of easement, may only be used for road purposes.[15] The cotenants enjoy both the "benefit" of using their commonly owned property, the road, for ingress and egress and the "burden" of restricting their use of the property for road purposes. Accordingly, in a case such as this one, a cotenant's ability to convey its undivided interest or some fractional share thereof must be limited to such conveyances as shall not interfere with the right of the other cotenants and their easement grantees to the possession, use and benefit of the whole of the roadway for purposes of ingress and egress. Craft Eng does not propose to block the roadway nor to convey its undivided interest for any purpose other than road purposes. Instead, it proposes to improve the whole of the roadway at its sole expense and to extend its length so as to provide ingress and egress for the houses it plans to build on parcels B and C of its short plat.

Butler and Lee argue that the only property right they have worth protecting is the right to limit the number of persons who may properly use the road. They argue that coequal rights to a road can only be discussed in terms of access and that it is not equal for one parcel to have a one-third ownership interest and yet have only the same access as a number of other owners with one-sixth or less ownership interests. These arguments are based upon a misunderstanding of the nature of a tenancy in common property interest. Each cotenant, regardless of the size of its undi-vided fractional share, has a coequal right to the possession, use and enjoyment of the whole of the property, the only limitation being that it must exercise its right so as not to interfere with the coequal rights of the other cotenants. *De la Pole,* 131

---

[15]This is so because the cotenants, over the years, have granted easements appurtenant to various nonpossessory third parties. See discussion *infra.*

Wash. at 358. Contrary to the position of Butler and Lee, that to allow Craft Eng to provide access to parcels B and C of its short plat would "dilute" the interest of the other cotenants, the right of the cotenants to the possession, use and enjoyment of the whole of the roadway would remain unchanged.[16]

2. Difference Between Fee Interest and Easement; Effect of 1952 Easement.

. We next address the contention of Butler and Lee that only that parcel now known as parcel A of Craft Eng's short plat is entitled to ingress and egress over the private road, in that the undivided interest in the roadway conveyed to Rantz in 1945 was set forth in deed 1, by which the property to which we now refer as parcel A was conveyed. That this was the intended result, Butler and Lee argue, is evidenced by the 1952 grant of easement which made the reciprocal easements thereby granted appurtenant only to what is now Craft Eng's parcel A. Had Rantz and the other parties to the 1952 grant of easement intended all of tracts 11 and 12 to be benefited by the reciprocal easements thereby granted, Butler and Lee argue that such would have been stated in the 1952 easement document.

---

[16]Butler and Lee further contend that, if Craft Eng may convey its undivided ownership interest of record into three separate undivided interests of one-twelfth each, it could as easily convey much smaller fractional shares, with an eye to acquiring and developing an area of undeveloped land south of unopened N.E. 130th Street and extending the private road through unopened N.E. 130th to provide ingress and egress to perhaps dozens of additional new homes. We believe that the respondents and their neighbors would have an adequate remedy, in the event of any such effort, not only through Seattle's DCLU and their right to an appeal of any adverse decision by DCLU but also by means of a request for injunctive relief.

Certainly, it would be possible, by virtue of sheer volume of traffic, to so congest a commonly owned roadway that the right of any given cotenant to possess, use and enjoy the road would be *impermissibly* interfered with. Such is not the case here. The hearing examiner determined that the additional volume of traffic here contemplated would constitute no more than a minimal adverse impact in terms of traffic, parking and noise and that the additional traffic would not affect the stability, safety and character of the road. Moreover, the improvement of the road, which DCLU required, at the sole expense of Craft Eng, as a condition of approving the short plat, will alleviate presently existing concerns about safety, traffic and parking. These findings were not appealed.

We reiterate that neither party has raised any issue in this appeal as to whether Pope & Talbot conveyed to Rantz and Harp a fee interest in the road or only an easement. For purposes of this appeal, it is undisputed that what was conveyed was Pope & Talbot's entire fee interest in the road — an undivided two-thirds thereof to Harp and an undivided one-third thereof to Rantz (with Pope & Talbot retaining only its vendor's interest in the property sold to Harp until the real estate contract was paid off). Although the metes and bounds of the roadway were conveyed "for road purposes" there is no contention in this case that, had Harp and Rantz determined, at some point before various third parties obtained contrary rights, to vacate the road and put the property to some other use, they could not have done so and if they had, that Pope & Talbot would have had any reversionary right to reclaim the metes and bounds of the roadway.

█ █ A fee interest in a commonly owned road is not the same as an easement. Although the metes and bounds of the roadway here conveyed were conveyed "for road purposes", a mere expression of the purpose or use to be made of the land will not debase the estate conveyed to less than a fee. *See, e.g., Faris v. Young*, 28 Ohio Op. 2d 35, 36, 199 N.E.2d 604, 606 (C.P. 1964) ("the fact that [a roadway] purpose was expressed in the [metes and bounds] deed, did not diminish the fee simple title the grantees received."). An easement is an interest which one person has in the land *of another*. It is a nonpossessory interest in land which is in possession of another, whereas an estate in land is a possessory interest. Restatement of Property § 450, comments *a, e*, at 2902-05 (1944).

Put another way, land cannot be appurtenant to land. *Cf. Harris v. Elliott*, 35 U.S. (10 Pet.) 25, 54, 9 L. Ed. 333 (1836); *Washington Med. Ctr., Inc. v. United States*, 545 F.2d 116, 127 (Ct. Cl. 1976). Accordingly, the fact that Rantz received an undivided fee interest in the metes and bounds of the roadway in the same deed (deed 1) by which the western portion of tract 11 was conveyed to him *did not*

*make the fee interest in the roadway appurtenant to the western portion of tract 11.* Moreover, one cannot have and does not need an easement over land which he has purchased in fee, unless and until he conveys or leases the land subject to any privilege of easement which he may desire to retain. *See* Restatement of Property § 450, comment *d,* illustration 1, at 2904; § 473, comment *a,* at 2968 (1944) ("Incorporeal interests such as easements are rights in the land of another. One cannot have such interests in his own land.").

Butler and Lee argue, however, that the 1952 grant of easement indicated an intent by the parties to that grant to delineate and limit the parcels intended to be benefited by the subject road.

■ A court's primary job in interpreting a restrictive covenant or easement is to ascertain the intent of the parties. *See Berg v. Hudesman,.* 115 Wn.2d 657, 663, 801 P.2d 222 (1990); *Leighton v. Leonard,* 22 Wn. App. 136, 141, 589 P.2d 279 (1978). In determining this intent, a court is to look at the contract as a whole, the subject matter and objective of the contract, the circumstances under which the contract was made, the subsequent acts of the parties and the reasonableness of the respective interpretations advanced by the parties. *See Berg,* 115 Wn.2d at 663 (citing *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 254, 510 P.2d 221 (1973)).

We first note that the 1952 grant of. easement was executed more than 6 years after Rantz acquired his undivided fee interest in the roadway. The 1945 deed (deed 1) and the 1952 grant of easement are not contemporaneous documents which may be construed as one instrument or treated as substantially one transaction. Moreover, we deem it an unreasonable interpretation of the 1952 grant of easement to assume that Rantz and Harp, who already had their respective undivided fee interests in and the right to utilize the whole of the roadway for roadway purposes, intended to convert those estates in land into mere easements. To the extent that either or both may have had any such intent, the 1952 grant of easement is legally insufficient to accom-

plish such a result. Rantz and Harp conveyed no estate in land in that document, thus, each retained his respective undivided fee interest in the roadway. They did not need, indeed, they could not acquire, an easement over their own property.

The record reflects that Rantz, at least, is deceased and none of the other parties to the 1952 grant of easement gave evidence for this trial. Although the motivation for the reciprocal grants, as between Harp and Rantz, must remain speculative, we need only determine, for purposes of this appeal, whether the 1952 grant of easement reduced Harp's and Rantz' fee interest in the roadway to the status of a mere easement. We hold that it did not, as a matter of law.

Because land cannot be appurtenant to land, Rantz' right as a tenant in common to utilize the roadway was not appurtenant to the remainder of the property conveyed in deed 1. Rantz had and retained the right to utilize the roadway to reach all portions of his property — all of tracts 11 and 12. Mathison, as Rantz' successor, had the legal right to convey his undivided one-third fee interest in the roadway in two fractional shares of one-sixth each. Craft Eng had the legal right to convey an undivided one-twelfth of its fractional share to Rainier and Craft Eng has the legal right to convey each of its remaining three-twelfths interest in undivided fractional shares of one-twelfth each to the future purchasers of parcels A, B and C.

### B. Substantial Injury/Equitable Factors

We next examine whether Craft Eng should be restrained from exercising its legal right based on any substantial injury which might result to Butler and Lee, in view of the equitable factors here extant. As to these issues, the unappealed findings of the hearing examiner for the DCLU appeal are dispositive. Butler and Lee cannot show any substantial injury. The additional traffic which will be generated by the three single-family houses which Craft Eng proposes to build will constitute no more than a minimal adverse environmental impact on parking, traffic and noise. The stability, safety and character of the road

will not be affected. Butler and Lee and their neighbors will benefit from the improvements to the roadway which Craft Eng will be required to make, at its sole expense. This development meets all the City's requirements and will serve the public interest. Moreover, Craft Eng has no other reasonable means of providing access for parcels B and C of the short plat, in view of the environmental and safety concerns of opening N.E. 130th Street.

We hold that the injunction was improperly granted and we dissolve the injunction.

## III
### REQUEST TO QUIET TITLE

Craft Eng assigns error to the trial court's failure to quiet title to Craft Eng's ownership interest of record in the private road. Butler and Lee respond, essentially without argument or authority, that (1) the issue had not been properly raised in the pleadings; (2) the issue had no bearing on the court's ultimate conclusion; (3) Craft Eng's present interest of record arose after the lawsuit and accompanying lis pendens were filed; and (4) Rainier was a necessary party to any such proceeding.

Although Craft Eng made no formal motion to amend its pleadings, in their complaint Butler and Lee sought alternatively to extinguish Craft Eng's title or to limit its ability to convey title to any person but the purchaser of parcel A. Craft Eng first sought to quiet title in its motion for summary judgment, well in advance of the trial. The issue raised in the trial brief could hardly have come as a surprise to Butler and Lee.

In the interest of judicial economy, we see no reason why Craft Eng should be required to commence a new lawsuit in order to finally dispose of all of the issues which flow naturally from the complaint filed by Butler and Lee. Craft Eng's request to quiet title is such an issue. Accordingly, we remand this issue and direct that (1) Craft Eng promptly file a motion to amend its pleadings if it wishes to pursue

its request to quiet title and that such motion, if made, be granted; (2) any necessary parties be joined if available for process; and (3) the trial court shall then determine Craft Eng's request to quiet title, in light of this opinion.

## CONCLUSION

We reverse the trial court, dissolve the injunction and remand for disposition of Craft Eng's request to quiet title, in light of this opinion, if Craft Eng timely moves to amend its pleadings so as to properly place the quiet title issue before the trial court.

SCHOLFIELD and PEKELIS, JJ., concur.