[No. 57375-1. En Banc. June 13, 1991.]

*In the Matter of the Proceedings of King County for
the Foreclosure of Liens for Delinquent Real
Property Taxes for the Years 1985 Through
1988, and Some Prior Years.*

SHARON AVRIN, ET AL, *Intervenors,* JACK KAHN, ET AL,
*Appellants,* v. KING COUNTY, ET AL, *Respondents,*
KEY BANK OF PUGET SOUND, ET AL,
*Intervenors.*

78

*Edwards, Sieh, Wiggins & Hathaway,* by *Malcolm L. Edwards* and *Howard M. Goodfriend,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Jeffery M. Slayton, Deputy,* for respondent King County.

*Sirianni & Youtz* and *Stephen J. Sirianni; Foster, Pepper & Shefelman* and *Mark J. Nielsen; Simmons, Viall & Lee* and *Wilton S. Viall III*, for respondents Washington Mutual Savings Bank, et al.

*C.C. Bridgewater, Prosecuting Attorney for Cowlitz County*, and *David R. Koss, Deputy*, on behalf of Washington State Association of County Treasurers, amicus curiae for respondents.

DURHAM, J. — The buyers of the property offered at a tax sale appeal the decision of the trial court which vacated the underlying foreclosure judgment. At issue is compliance with the requirements contained in RCW 84.64.050 that notice of foreclosure and sale in a property tax foreclosure action must include the local address and must be provided to all parties with a recorded interest in or lien of record on the property in question. We remand for further proceedings.

On June 2, 1988, King County issued a certificate of delinquency listing 637 parcels of land for which taxes were delinquent for 3 or more years and filed it with the Superior Court. That act initiated the foreclosure action at issue in this case. Between June 13 and October 27, 1988, the County mailed by certified mail notice of the commencement of the foreclosure to the owner listed on the tax rolls for each parcel of real property in the certificate. The County also ordered title reports on each parcel, and by certified mail notified the record owner or owners who had not already been notified. The County further notified all persons listed in the title report as having a recorded interest or lien in the property, except those with easements or recorded covenants. On October 28, 1988, the summons and notice were published in the Seattle Times.

Market Place North is a mixed use condominium project, containing both commercial and residential condominiums. The property at issue here is one commercial condominium which is part of a block of three contiguous commercial

units that occupy the lowest level of one building. The commercial units contain the Seattle Club, which is owned and operated by SAC Downtown Limited Partnership (Owners) and managed by its general partner, Gary Gaffner. They also house the Cafe Sport restaurant operated for the Seattle Club, and a Häagen-Dazs ice cream store. All units front on Western Avenue. Commercial Apartment 1, the unit which is the subject of this suit, contains the Haagen-Dazs and an aerobics exercise room for the Seattle Club.

Gaffner received initial notice of the foreclosure and the sale by registered mail at his home address on June 16, 1988. In October 1988, Gaffner received a second notice, again at his home. Notice of the foreclosure was also sent in October to Washington Mutual Savings Bank, a primary lender and judgment creditor of Owners, and to several others who had recorded interests in the property. Although the address of Commercial Apartment 1 is 2010 Western Avenue, all the notices concerning this property sent or published by the County contained the address 88 Virginia Street. The notices showed the following property description:

> UNIT COM'L #1
> MARKET PLACE NORTH CONDOMINIUM
> PCT OF VALUE .6492
> WESTERN AVE COM'L #1
>
> PROPERTY ADDRESS 88 VIRGINIA ST

Notice was not sent to Market Place Tower Associates Joint Venture, which held an easement for the security system and passage, nor to Market Place North Condominium Association and MPN-Housing, which held utility and other easements and covenants under the condominium declarations, nor to Clarence Wilde, the beneficiary of a deed of trust from Owners.

Owners do not deny that they have failed to pay their property taxes for the years 1985 through 1988. Owners have experienced financial difficulties which also resulted in a judgment and decree of foreclosure in favor of Washington

Mutual. That foreclosure had been deferred because Owners had been making payments to Washington Mutual. When Owners received their notice of the delinquency and pending tax foreclosure, they turned to Washington Mutual for assistance in paying their taxes. Washington Mutual, to protect its own interests, agreed to pay the delinquencies and add the amount to Owners' debt.

Washington Mutual consulted a title report in preparing to pay the taxes. Because of a clerical error, the title company left off the last page of the report, so that it did not reflect all three units, but instead showed that foreclosure was pending only on Commercial Apartment AC (Seattle Club). This information was mistakenly confirmed by an independent property tax reporting service. The confusion was compounded because Gaffner personally owned one of the residential units of Market Place North with an address of 88 Virginia Street, the same address listed on the notices for the commercial property here.

Prior to the foreclosure sale, Washington Mutual called the County to find out exactly how much to pay and requested the amount only for the Seattle Club unit. The County advised Washington Mutual that there were two related parcels which also were delinquent, but Washington Mutual did not accept the information or make a payment on the other two units. Because of both the mistaken title reports and the incorrect street address, Washington Mutual believed that there was only one delinquent parcel.

On December 30, 1988, the County obtained a judgment foreclosing its tax liens. The property at issue here was sold at auction on January 13, 1989. At the sale, appellants Jack and Denise Kahn, Robert Edwards and Don Fleming, d.b.a. Friday the Thirteenth Group (Buyers) jointly purchased Commercial Apartment 1.

On January 20, 1989, Washington Mutual moved to vacate the tax foreclosure judgment and was subsequently joined in that motion by Gaffner and by the parties who did not receive notice of the foreclosure. The trial court entered

a memorandum opinion on February 17, 1989, vacating the foreclosure judgment. The court relied primarily on CR 60(b) to find that Washington Mutual's mistake was proper grounds for relief from the judgment. The court also held that the notice sent by the County did not meet the requirements of RCW 84.64.050, because it contained the wrong address. Thus, the judgment was void for want of jurisdiction. The trial court expressly declined to reach the constitutional issues regarding the failure of the County to give notice to some parties with a recorded interest in the property, but did note that this lack of notice would at least render the foreclosure void as to those parties.

A motion to reconsider was denied, and the trial court entered an order implementing its memorandum decision on May 15, 1989. The appeal was certified by the Court of Appeals and certification was accepted.[1] We remand to the trial court for its factual determination of the sufficiency of the property description.

## PROPERTY DESCRIPTION

■ It is well settled that a mistake of the taxpayer is insufficient reason to vacate a tax sale. *Label v. Cleasby*, 13 Wn. App. 789, 794, 537 P.2d 859 (1975). To prevent the upset of tax sales and to assure the stability of tax deeds, RCW 84.64.180 provides that a tax deed is prima facie evidence of the regularity of all proceedings leading up to the tax sale, and prevents the parties from raising any objections to the proceedings except where the tax has been paid, or the property was not liable to the tax. *See Schultz v. Kolb*, 189 Wash. 187, 193, 64 P.2d 79 (1937). We have also

[1]Owners imply that RCW 84.64.050 is unconstitutional on its face because it does not specify the content of the notice that is required. Owners' reliance on *Wenatchee Reclamation Dist. v. Mustell*, 102 Wn.2d 721, 728, 684 P.2d 1275 (1984), is misplaced, however. Here, the notice did inform Owners of the pendency of the foreclosure action, the time of the sale, the amount of tax owed, the redemption rights, and the right to contest the proceedings at a hearing. Owners were not prejudiced by the lack of specificity in the statute, since the notice contained those elements. Therefore, they lack standing to attack those provisions. *Mustell*, at 729.

recognized that a tax deed may be invalidated where the action of a public official has prevented payment of the tax. *Label*, at 792. None of these circumstances was present here. Instead, the trial court found that the tax was not paid because of Washington Mutual's mistake. This was error, and the judgment may not be vacated on the grounds of mistake, inadvertence, or excusable neglect.

■ There are, however, certain jurisdictional requirements which are prerequisites to the maintenance of a tax foreclosure action. If the court did not have jurisdiction to enter the foreclosure judgment, the tax sale may have been void. For instance, a county's failure to comply with the statutory provisions prescribing the content and manner of notice in proceedings to collect delinquent property taxes deprives the court of jurisdiction over the tax foreclosure proceeding and renders void any foreclosure sale and tax deed issued. *Pierce Cy. v. Evans*, 17 Wn. App. 201, 204, 563 P.2d 1263 (1977). Jurisdiction has been found lacking in many situations, for deficiencies such as an inaccurate legal description, insufficient notice of the time to answer, and "failure to give notice in compliance with the letter and spirit of statutory requirements". *Evans*, at 204. The court in *Evans* concluded:

> The clear import of the preceding decisions is that notice complying with statutory dictates is a jurisdictional prerequisite to the entry of a valid judgment and to the enforceability of the foreclosure sale. The question here thus becomes whether [the] County followed the procedures specified in RCW 84.64.050, thereby conferring jurisdiction on the court, so that the court could validly foreclose the delinquent tax lien.

*Evans*, at 204. We adopt this reasoning.

■ In addition, in order for the superior court to obtain jurisdiction and to enter judgment, any notice must contain a sufficiently accurate property description. *Matthews v. Morrison*, 195 Wash. 288, 291, 80 P.2d 856 (1938). "A tax foreclosure by a county is a proceeding *in rem*, and jurisdic-

tion of the *res* must clearly appear." *Kupka v. Reid*, 50 Wn.2d 465, 467, 312 P.2d 1056 (1957) (citing *Napier v. Runkel*, 9 Wn.2d 246, 114 P.2d 534, 137 A.L.R. 175 (1941)). A judgment which does not contain an adequate description is void on its face and may be attacked by anyone having a direct interest in the property. *King Cy. v. Lesh*, 24 Wn.2d 414, 417, 165 P.2d 999 (1946).

■ The requirement of a sufficiently accurate property description serves three important purposes. First, it informs an owner of the claim on his or her property; second, it alerts those who wish to buy the property of an impending tax sale; and, finally, it facilitates the proper execution of the resulting tax deed. *Kupka*, 50 Wn.2d at 467 (citing *Ontario Land Co. v. Yordy*, 44 Wash. 239, 87 P. 257 (1906)).

■ The estoppel by deed statute does not prevent this court from upsetting a tax sale when the judgment was entered without jurisdiction. If the trial court does not obtain jurisdiction to enter the judgment in the first place because the statutory requirements were not met or the description is insufficient, RCW 84.64.180 does not even arise. Rather, if the foreclosure judgment is void, it is as if the tax deed never existed. It should be noted, however, that the lack of jurisdiction over the foreclosure judgment and sale in no way affects the fact that the taxes are actually owed to the county. To collect the taxes owed, the county can cure any deficiency in the notice by refiling for foreclosure with the correct property description. In sum, for the court to obtain jurisdiction to enter a foreclosure judgment, the county must comply with all statutory requirements, and the property description must be sufficiently accurate.

The requirements for property tax foreclosure actions are set forth in RCW 84.64.050. It provides, in part:

> After the expiration of three years from the date of delin-
> quency, . . . the county treasurer shall proceed to issue certifi-

cates of delinquency on said property to the county for all years' taxes, interest, and costs . . ..

. . . .

. . . The treasurer shall file said certificates when completed with the clerk of the court, and the treasurer shall thereupon . . . proceed to foreclose in the name of the county, the tax liens embraced in such certificates, and the same proceedings shall be had as when held by an individual: *Provided*, That notice and summons must be served or notice given in a manner reasonably calculated to inform the owner or owners, and any person having a recorded interest in or lien of record upon the property, of the foreclosure action. . . . *In addition to the legal description on the tax rolls, the notice must include the local street address, if any.*

(Italics ours.) The requirement of a local address was added in 1972. Laws of 1971, 2d Ex. Sess., ch. 84, § 2, p. 175.

 The Legislature is presumed to know existing case law in areas in which it is legislating. *Woodson v. State*, 95 Wn.2d 257, 262, 623 P.2d 683 (1980). We may, therefore, look to the common law to ascertain the proper scope of this statute. In interpreting the statutory requirements of a legal description and a local address, a trial court should apply the long-standing rule announced in *Napier v. Runkel*, 9 Wn.2d 246, 263, 114 P.2d 534, 137 A.L.R. 175 (1941):

[T]he general rule is that, in order to divest an owner's title through a tax foreclosure, the property must be identified in the proceedings and described with reasonable certainty, so that a person of ordinary intelligence, from an examination of the foreclosure proceedings, could locate the property sought to be foreclosed.

If the description provides an intelligent means of identifying the property and does not mislead, it is sufficient. *Centralia v. Miller*, 31 Wn.2d 417, 424, 197 P.2d 244 (1948).[2] To

---

[2]*See also Wenatchee Reclamation Dist. v. Mustell*, 102 Wn.2d 721, 727, 684 P.2d 1275 (1984); *Wingard v. Heinkel*, 70 Wn.2d 730, 732, 424 P.2d 1010 (1967); *King Cy. v. Lesh*, 24 Wn.2d 414, 417, 165 P.2d 999 (1946); *Wingard v. Pierce Cy.*, 23 Wn.2d 296, 304, 160 P.2d 1009 (1945); *King Cy. v. Rea*, 21 Wn.2d 593, 595, 152 P.2d 310 (1944); *Matthews v. Morrison*, 195 Wash. 288, 291, 80 P.2d 856 (1938); *Stritzel v. Smith*, 20 Wn. App. 218, 220, 579 P.2d 404 (1978); *Asotin Cy.*

determine if a property description is sufficient, the description should be liberally construed and extrinsic evidence may be consulted. *Miller*, at 425.

The common law rule stated here precedes the amendment requiring a legal description and a local address. Since there is no indication that the Legislature intended to supplant the venerable rule stated in our prior decisions, and since RCW 84.64.050 in no way conflicts with the common law, we hold that the standard for sufficiency of property descriptions supplies the proper test to determine if the requirements of RCW 84.64.050 have been satisfied.

Here, the parties' dispute centers around whether the notice received by Gaffner and other interested parties contained adequate information so as to confer jurisdiction to enter the foreclosure judgment. The sufficiency of a description in a tax notice is a question of fact. *Centralia v. Miller*, 31 Wn.2d at 425 (citing 51 Am. Jur. *Taxation* § 1035, at 904 (1944) (currently found at 72 Am. Jur. 2d *State and Local Taxation* § 919, at 215 (1974))). The trial court, however, did not make the factual determinations necessary to the resolution of this dispute. Accordingly, we remand the case with instructions to apply the principles expressed in this opinion. The trial court must determine, taking all the circumstances into account, if the property description read as a whole provided an intelligent means of identifying the property and was not misleading. If a person of ordinary intelligence could identify the described property with reasonable certainty, the description was adequate. If not, then no jurisdiction was obtained, and the sale was void.[3]

---

*Port Dist. v. Clarkston Comm'ty Corp.*, 2 Wn. App. 1007, 1010, 472 P.2d 554 (1970).

[3]Buyers argue that *Wenatchee Reclamation Dist. v. Mustell*, 102 Wn.2d 721, 727, 684 P.2d 1275 (1984) stands for the proposition that Owners must make an additional showing of actual prejudice to obtain relief. *Mustell* does not require a showing of prejudice, however. First, the court in *Mustell* based its holding solely on the inadequacy of notice and did not rely on any prejudice to the taxpayer. Second, disposition of this case turns on statutory, not constitutional, grounds and, therefore, no showing of actual prejudice is required.

## MAILED NOTICE

This case also raises the issue of who is entitled to receive notice under the statute. Owners claim that the statute requires notice to all interested parties for the court to obtain jurisdiction.[4] Buyers and amicus assert that lack of proper notice has only the effect of rendering the sale void as to the party not served, but that the sale is valid otherwise.

Owners do not contest the sufficiency of service on themselves, but rather argue that the lack of notice to Wilde, the beneficiary in a deed of trust, rendered the entire foreclosure action void for lack of jurisdiction. Buyers and amicus argue that the lack of notice to easement and covenant holders, as well as other nonowners, has only the effect of rendering the sale void as to their interests; that is, anyone with an interest in the property sold who does not receive proper notice does not lose that interest, but instead the property is subject to the interest despite the sale. We address this issue here to alleviate the uncertainty which is apparent on the facts of this case and to prevent unnecessary litigation in the future.

---

[4]Owners also argue that since no lis pendens was filed, the court should be deprived of jurisdiction to enter the foreclosure. We disagree. The filing of a notice of lis pendens is permitted by RCW 4.28.320, which provides that a party to any action that affects real property

> may file with the auditor of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property in that county affected thereby.

The purpose of lis pendens is to provide notice to anyone who subsequently deals with the property that they will be bound by the action. *Merrick v. Pattison*, 85 Wash. 240, 245, 147 P. 1137 (1915); *R.O.I., Inc. v. Anderson*, 50 Wn. App. 459, 462, 748 P.2d 1136 (1988). The substantive rights of the parties are not affected. *R.O.I.*, at 462. RCW 84.64 makes no mention of a lis pendens filing.

No useful purpose would be served by requiring a lis pendens be filed in property tax foreclosure actions. One who obtains a subsequent interest is presumed to have checked the status of the property taxes. A simple inquiry at the office of the county treasurer would reveal that the certificate of delinquency had been issued. Rather than require the county to continually update its title reports, the onus is on the one taking an interest in property to determine whether the property is in foreclosure.

RCW 84.64.050 is again the applicable statute. It provides, in part:

[N]otice and summons must be served or notice given in a manner reasonably calculated to inform the owner or owners, and any person having a recorded interest in or lien of record upon the property, of the foreclosure action. Either (1) personal service upon the owner or owners and any person having a recorded interest in or lien of record upon the property, or (2) publication once in a newspaper of general circulation, which is circulated in the area of the property and mailing of notice by certified mail to the owner or owners and any person having a recorded interest in or lien of record upon the property, or, if a mailing address is unavailable, personal service upon the occupant of the property, if any, is sufficient.

This court has long held that lack of notice to an owner "renders the sale and the tax deed void, or at least voidable, at the suit of the record owners or their grantee". *Slocum v. Peterson*, 131 Wash. 61, 68, 229 P. 20, 40 A.L.R. 1071 (1924); *Pierce Cy. v. Evans*, 17 Wn. App. 201, 204, 563 P.2d 1263 (1977).

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950), the Supreme Court held that a state must provide reasonable notice to interested parties prior to any action which will affect an interest in life, liberty, or property protected by the due process clause of the Fourteenth Amendment. The principle announced in *Mullane* was utilized by the Court in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983). There, the Court held that neither notice by publication and posting, nor mailed notice to the property owner, provides a mortgagee of real property with adequate notice of a tax sale of the mortgaged property. *Mennonite*, at 799. The Court reasoned first, that a mortgagee possesses a "substantial property interest that is significantly affected by a tax sale", and second, that the mortgagee is thus "entitled to notice reasonably calculated to apprise him of a pending tax sale." *Mennonite*, at 798. This court has recognized the requirements of *Mennonite* and applied its principles. *Wenatchee Reclamation Dist. v.*

*Mustell*, 102 Wn.2d 721, 726, 684 P.2d 1275 (1984); *Brower v. Wells*, 103 Wn.2d 96, 103, 690 P.2d 1144 (1984).

These constitutional requirements were recognized by the Legislature and, in 1984, RCW 84.64.050 was amended to reflect the requirements of *Mennonite*. *See Genesee, Inc. v. Firstline Inv., Inc.*, 48 Wn. App. 707, 710, 740 P.2d 367, *review denied*, 109 Wn.2d 1012 (1987). The Legislature added the words "and any person having a recorded interest in or lien of record upon the property" to the notice provisions, thereby requiring notice to owners and others with interests in the property. Laws of 1984, ch. 179, § 2, p. 859. Thus, a person must be served either personally or by publication followed by mailing. RCW 84.64.050. Although the language of the statute is controlling, the rationale used by the Court in *Mennonite* is helpful in determining precisely which interests give rise to the right to notice of a tax foreclosure sale.

Three types of interests are implicated here. First, there are the easements held by Market Place North Condominium Association, MPN-Housing, and Market Place Tower Associates Joint Venture. Second, there are the covenants between Owners and Market Place North Condominium Association in the nature of condominium declarations. Third, there is the subsequent deed of trust held by Wilde. Each interest must be dealt with separately.

The appropriate analysis to determine if a particular entity's interests received adequate notice can be derived from the reasoning in *Mennonite*. First, is there a "substantial property interest that is significantly affected by a tax sale"? *Mennonite*, at 798. To determine if a person has a substantial property interest, state law must be consulted. Second, if there is a "legally protected property interest", then the person holding it is "entitled to notice reasonably calculated to apprise him of a pending tax sale." *Mennonite*, at 798. Third, mere publication or notice to the property

owner is insufficient, and notice by mail or other means is required if the name and address of the person with some other interest is "reasonably ascertainable." *Mennonite*, at 800. Finally, notice of delinquency is not enough; the person is entitled to notice that a tax sale is pending. *Mennonite*, at 800.

██ RCW 84.64.460 deals with the effect of a foreclosure sale on easements:

> Any foreclosure of delinquent taxes on any tract, lot or parcel of real property subject to such easement or easements, and any tax deed issued pursuant thereto shall be subject to such easement or easements, provided such easement or easements were established of record prior to the year for which the tax was foreclosed.

The statute plainly means that an easement holder does not have a "substantial property interest that is significantly affected by a tax sale". Under the terms of RCW 84.64.460, the easement is not affected by the sale, but instead the property continues to be subject to the easement. Since no property interest was affected, no notice of the impending sale was required under *Mennonite* to Market Place North Condominium Association, MPN-Housing, or Market Place Tower Associates Joint Venture.

██ The provisions of RCW 84.64.460 also extend to both restrictive and affirmative covenants. *Lake Arrowhead Comm'ty Club, Inc. v. Looney*, 112 Wn.2d 288, 770 P.2d 1046 (1989); *Olympia v. Palzer*, 107 Wn.2d 225, 728 P.2d 135 (1986). In previous cases, the court held that covenants were sufficiently similar to easements so that the protections of RCW 84.64.460 should apply. *Looney*, at 294; *Palzer*, at 231. The covenants in this case are contained in the condominium declarations, and the expectations of the other condominium owners would be defeated if the covenants were extinguished by the tax sale. *Cf. Palzer*, at 231. The same principles applied in *Looney* and *Palzer* should be applied here, and again, the property interest is unaffected

by the sale. Therefore, no notice is required under *Mennonite* to Market Place North Condominium Association.

In contrast, the beneficiary of a deed of trust does have a substantial interest in the property which will be affected by a tax sale. Owners argue that under the statute, Wilde is entitled to notice of the tax sale because he had a recorded interest in the property. However, we hold that Wilde was not entitled to mailed notice for two reasons.

■ First, the statute requires that notice must be "given in a manner reasonably calculated to inform . . . any person having a recorded interest in or lien of record upon the property, of the foreclosure action." RCW 84.64.050. Here, foreclosure actions were commenced prior to Wilde taking an interest in the property. The issuance and filing of a certificate of delinquency, as required by the statute, provides notice calculated to inform anyone who acquires a *subsequent* interest in the property.

Second, Wilde's name and address cannot be said to be "reasonably ascertainable" since his deed of trust was not recorded until after the certificate of delinquency had been filed. Thus, under the criteria set forth in *Mennonite*, which underlie the statutory requirements, notice by mail is not required.

We hold that parties with recorded interests in easements and covenants are not entitled to notice, nor are parties with interests recorded subsequent to the filing of the certificate of delinquency. The County provided notice to all parties who were entitled to receive notice under the statute and the reasoning of *Mennonite* in the foreclosure action involving Commercial Apartment 1. We therefore decline to decide at this time what the effect of the lack of proper notice to all parties would be.

In conclusion, we remand to the trial court to determine if the property description was sufficient to confer the necessary jurisdiction.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, and GUY, JJ., concur.