922 P.2d 73 (1996)
130 Wash.2d 142
In re the Proceedings for Clallam County for the Foreclosure of Liens for Delinquent Real Property Taxes for the Year 1991, and some prior years.
CLALLAM COUNTY, Appellant,
v.
Janice FOLK, Respondent.
No. 63198-1.
Supreme Court of Washington, En Banc.
Argued May 15, 1996.
Decided September 12, 1996.
Reconsideration Decided November 1, 1996.
*75 Platt, Irwin, Colley, Oliver & Wood, Stephen E. Oliver, Port Angeles, for Respondent.
David H. Bruneau, Clallam County Prosecutor, Christopher Melly, Deputy, Port Angeles, for Appellant.
Norm Maleng, King County Prosecutor, Margaret A. Pahl, Deputy, Seattle, for Amicus Curiae.
*74 MADSEN, Justice.
At issue is whether Clallam County complied with statutory and due process notice requirements when it gave notice of tax foreclosure proceedings to a tenant-in-common owning an undivided fractional interest in real property who failed to pay real property taxes on his undivided interest, but did not give notice of the proceedings to other cotenants of the property. We find that it did, and reverse the trial court order vacating the judgment of foreclosure and order of sale for lack of notice.

STATEMENT OF FACTS
On September 7, 1994, Clallam County filed this action to foreclose a number of real property tax liens for 1991 and prior years. Interests in two of the parcels identified in the certificate of delinquency were held by James C. Cleland as a tenant-in-common. Mr. Cleland held a 1/36th undivided interest in each parcel. He acquired his interests through the estate of his wife, a member of the Makah Indian Tribe. Because Mr. Cleland was not Indian, he took his interest in the estate in fee, and it was subject to real property taxes. Mr. Cleland failed to pay real property taxes, interest and penalties on his 1/36th interests in the parcels, totaling about $842.
*76 Pursuant to RCW 84.64.050, the Clallam County Treasurer ordered a title search to determine the record title holder of the property on which the taxes were delinquent. The title search was ordered only for Mr. Cleland's fractional undivided interest, and thus it did not disclose any ownership interests in the two parcels of land held by any other cotenants. There is no dispute that the County properly gave notice of the tax foreclosure proceedings to Mr. Cleland.
Respondent Janice Folk is Mr. Cleland's stepdaughter. She also acquired an undivided 1/36th interest in the parcels through her mother's estate. Respondent is evidently a member of the Makah Indian Tribe and does not hold her interest in fee. The County says that some of the cotenants of the parcels are Indians not subject to taxation. There is no issue concerning any delinquent taxes on Respondent's interest, and the County did not seek to foreclose any tax liens on her undivided interests in the two parcels.
Mr. Cleland did not appear or defend in the tax foreclosure proceedings. On November 18, 1994, Clallam County obtained a judgment of foreclosure and order of sale. Clallam County acquired Mr. Cleland's interests at the foreclosure sale because there were no other bidders for the property.
Six months after the sale, on May 19, 1995, Respondent tendered delinquent taxes, penalties and interest in the amount Mr. Cleland had owed. The tender was rejected. On June 1, 1995, Mr. Cleland quitclaimed any interest he had in the parcels to Respondent. On June 21, 1995, Respondent moved to intervene in the tax foreclosure proceedings and moved to vacate the judgment on the basis that proper notice of the proceedings had not been given to the cotenants of the two parcels. The trial court granted both motions, and on August 8, 1995, entered an order granting Respondent leave to intervene and an order vacating the judgment of foreclosure and order of sale and voiding the tax deed delivered to the County.
The County appealed, seeking direct review by this court, which was granted.[1]

ANALYSIS
The County urges the court to draw a distinction between a case where the common property held by all the tenants-in-common is the subject of tax foreclosure proceedings and a case where only one tenant-in-common's individual undivided interest is the subject of such proceedings. In the former case, there is no question that all of the cotenants must be given notice under RCW 84.64.050. But where the individual undivided interest of only one tenant-in-common has been separately assessed for taxes which have remained unpaid, and only that individual undivided interest is the subject of tax foreclosure proceedings, the County is correct that neither RCW 84.64.050 nor due process requires notice of the proceedings to the other cotenants.
Certain jurisdictional requirements are prerequisites to the maintenance of a tax foreclosure action. In re Foreclosure of Liens, 117 Wash.2d 77, 811 P.2d 945 (1991). Absent compliance with those requirements, any subsequent foreclosure and tax sale may be void. One such jurisdictional defect is the "`failure to give notice in compliance with the letter and spirit of statutory requirements.'" Id. at 84, 811 P.2d 945 (quoting Pierce County v. Evans, 17 Wash.App. 201, 204, 563 P.2d 1263 (1977)). "[L]ack of notice to an owner `renders the sale and the tax deed void, or at least voidable, at the suit of the record owners or their grantee.'" In re Foreclosure of Liens, 117 Wash.2d at 89, 811 P.2d 945 (quoting Slocum v. Peterson, 131 Wash. 61, 68, 229 P. 20, 40 A.L.R. 1071 (1924) and Pierce County, 17 Wash.App. at 204, 563 P.2d 1263).
RCW 84.64.050 provides in relevant part that notice of tax foreclosure proceedings must be given:
Notice and summons must be served or notice given in a manner reasonably calculated to inform the owner or owners, and any person having a recorded interest in or lien of record upon the property, of the foreclosure action.... Either (a) personal service upon the owner or owners and any person having a recorded interest in or lien or record upon the property, or (b) *77 publication once in a newspaper of general circulation ... in the area of the property... and mailing of notice by certified mail to the owner or owners and any person having a recorded interest in or lien of record upon the property, or, if a mailing address is unavailable, personal service upon the occupant of the property, if any, is sufficient.... The person or persons whose name or names appear on the treasurer's rolls as the owner or owners of the property shall be considered and treated as the owner or owners of the property for the purpose of this section.... PROVIDED, That prior to the sale of the property, the treasurer shall order or conduct a title search of the property to be sold to determine the legal description of the property to be sold and the record title holder, and if the record title holder or holders differ from the person or persons whose name or names appear on the treasurer's rolls as the owner or owners, the record title holder or holders shall be considered and treated as the owner or owners of the property for the purpose of this section, and shall be entitled to the notice provided for in this section.
The notice issue is twofold under the statute. First, "owners" of the property must receive notice. Id. Second, the statute also requires that "any person having a recorded interest in or lien of record upon the property" must be given notice. Id. As to "owners," regardless of what name appears as owner on the tax rolls, the proviso in the statute requires that the county treasurer order or conduct a title search to determine the record title holders, and provides that a record title holder is an "owner" for purposes of the statute.
Respondent does not claim that her name appears on the tax rolls as an "owner," but challenges the way in which the County determined the "owner" of the property through the title search. The county treasurer ordered a title search, but ordered it only as to Mr. Cleland's 1/36th undivided interest. The title search failed to disclose any other record owners of that 1/36th undivided interest. Respondent maintains that the treasurer failed to comply with the statute because the treasurer did not order a general title search of the parcels in which Mr. Cleland held a 1/36th interest, i.e., a search which would have disclosed any record ownership interest in the two parcels of real property, including ownership interests in the property by cotenants such as herself. These cotenants, she argues, are entitled to notice.
The proviso in the statute states that to ascertain the legal description and the record title holder(s), the treasurer must order or conduct a title search "of the property to be sold[.]" RCW 84.64.050 (emphasis added). The County did not proceed against the whole of the two parcels, but only against Mr. Cleland's undivided interests upon which the taxes were delinquent, and purported to sell only those undivided interests. Respondent was not an "owner" of the "property to be sold," and accordingly was not an "owner" entitled to notice under the statute.
This conclusion is consistent with the nature of the property held by a tenant-in-common. The essential attribute of a tenancy in common is possession; each cotenant is the holder of an undivided interest in the whole of the property, with the right to possession and enjoyment of the whole property. See Rouse v. Glascam Builders, Inc., 101 Wash.2d 127, 130, 677 P.2d 125 (1984). However, each cotenant's title is "separate and distinct, and each tenant owns a separate estate." Falaschi v. Yowell, 24 Wash.App. 506, 509, 601 P.2d 989 (1979); see Holohan v. Melville, 41 Wash.2d 380, 400, 249 P.2d 777, 255 P.2d 899 (1953). Thus, one tenant-in-common may sell, lease, or otherwise dispose of his or her interest in the common property without the consent of the other cotenants and without their joining in the conveyance. De la Pole v. Lindley, 131 Wash. 354, 357-58, 230 P. 144 (1924); see also Briggle v. Cox, 72 Wash. 574, 579, 131 P. 209 (1913); Carr v. Deking, 52 Wash.App. 880, 884, 765 P.2d 40 (1988), review denied, 112 Wash.2d 1019 (1989); Rayonier, Inc. v. Polson, 400 F.2d 909, 919 (9th Cir.1968). A tenant-in-common has a separate undivided interest which is descendible and may be conveyed by deed or will. Butler v. Craft Eng Constr. Co., 67 Wash.App. 684, 694, 843 P.2d 1071 (1992). A *78 tenant-in-common may impose a lien or other encumbrance upon his or her own undivided interest in the property. Patrick v. Bonthius, 13 Wash.2d 210, 215, 124 P.2d 550 (1942). However, one cotenant cannot do anything with respect to the common property to bind the cotenants without authorization or ratification. McGill v. Shugarts, 58 Wash.2d 203, 204, 361 P.2d 645 (1961).
Settled law therefore contemplates that a cotenant's individual title interest may be transferred or encumbered without the consent or knowledge of the other cotenants. The separate and distinct title interest which the cotenant holds, and which he or she is free to alienate, devise, or encumber without regard to the other cotenants' interests in the common property, is only that cotenant's individual, undivided interest. RCW 84.64.050's proviso, which defines "owner" with reference to the record title holder of the property to be sold, encompasses the title interest of just one tenant-in-common where only that tenant-in-common's undivided interest is the subject of foreclosure proceedings and a tax sale. In such circumstances, only that tenant-in-common is an "owner" because only that tenant-in-common's record title interest is the property to be sold.
The principle that a tenant-in-common's individual undivided interest may be at issue under the taxing scheme independently of the other cotenants' interests is reflected in RCW 84.56.340. That statute permits a person desiring to pay taxes on an undivided interest in any real property to do so by paying a proportionate share of the entire taxes charged on the entire tract as that person's interest bears to the whole. The statutory scheme thus contemplates the possibility that some cotenants might pay their taxes on their undivided interests while others' taxes might be delinquent. In such circumstances, the County may proceed against the delinquent interests. Further, in cases where some cotenants' interests are not subject to taxation, as appears to be the case here, the County would have no basis for a foreclosure action against exempt interests and could proceed only against interests upon which taxes were unpaid, i.e., the County could not, for example, purport in this case to sell the whole of the two parcels. See 85 C.J.S. Taxation § 806, at 129 (1954) ("[w]here separate assessments of the separate interests of tenants in common ... are proper, the interest of one, although undivided, may be sold for his own default, without disturbing the title of the other"); Ronkendorff v. James N. Taylor's Lessee, 29 U.S. (4 Pet.) 349, 362, 7 L.Ed. 882 (1830) (same).
RCW 84.64.050, in addition to requiring that notice be given to "owners" of the property, requires that notice be given to "any person having a recorded interest in or lien of record upon the property." As this court has explained, this language was added to the statute in 1984 when the Legislature amended the statute to reflect the requirements of Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In re Foreclosure of Liens, 117 Wash.2d at 90, 811 P.2d 945; see Laws of 1984, ch. 179, § 2, p. 859. In Mennonite, the Court held that notice of a tax sale was required to be given to a mortgage holder. The Court reasoned that due process requires that notice reasonably calculated to apprise a person having a "substantial property interest that is significantly affected by a tax sale" must be given to such a person of a pending tax sale. Mennonite, 462 U.S. at 798, 103 S.Ct. at 2711. Notice by publication and posting is insufficient notice in such a case, as is mailed notice to the property owner. Id. at 799, 103 S.Ct. at 2711.
Although the language of RCW 84.64.050 is controlling, the rationale of the Court in Mennonite is helpful in determining which interests give rise to the right to notice under the statute. In re Foreclosure of Liens, 117 Wash.2d at 90, 811 P.2d 945. The proper analysis to determine whether a particular entity's interests require notice of tax foreclosure proceedings and whether sufficient notice has been given is as follows:
First, is there a "substantial property interest that is significantly affected by a tax sale"? Mennonite, at 798, 103 S.Ct. at 2711. To determine if a person has a substantial property interest, state law must be consulted. Second, if there is a "legally protected property interest", then the person holding it is "entitled to notice *79 reasonably calculated to apprise him of a pending tax sale." Mennonite, at 798, 103 S.Ct. at 2711. Third, mere publication or notice to the property owner is insufficient, and notice by mail or other means is required if the name and address of the person with some other interest is "reasonably ascertainable." Mennonite, at 800, 103 S.Ct. at 2712. Finally, notice of delinquency is not enough; the person is entitled to notice that a tax sale is pending. Mennonite, at 800, 103 S.Ct. at 2712.
In re Foreclosure of Liens, 117 Wash.2d at 90-91, 811 P.2d 945.
In In re Foreclosure of Liens, we held that an easement and restrictive and affirmative covenants contained in condominium declarations are not "substantial property interests" which would be significantly affected by a tax sale. Under state law such interests are not affected by the sale, but instead the property continues to be subject to the easements and covenants. Id. at 91-92, 811 P.2d 945. The easement which survived tax foreclosure proceedings in In re Foreclosure of Liens was a recorded interest in the property. However, because the easement was not significantly affected by the foreclosure proceedings, notice was not required. This conclusion accords with the premise that as a matter of due process, one may not be deprived of property without notice. If there is no deprivation, no due process notice is required. See Javaras v. Caulfield, 174 Ill.App.3d 314, 123 Ill.Dec. 785, 528 N.E.2d 330 (1988) (tenants-in-common were not deprived of property rights and thus were not entitled to notice as a matter of due process of the tax sale of their cotenant's 60 percent interest in the property because their interests were not directly affected by the sale).
Respondent argues, however, that tenants-in-common have special rights which are substantial. She first points out that the cotenants have a new "public" partner in their property. She says that the County, as a tenant-in-common, would have the right to partition the property and is a new and different owner in the mix of owners of the property. She then notes several circumstances in which a cotenant is not as free to act with respect to property held in a concurrent tenancy as she would be with regard to other property. For example, generally one cotenant may not redeem the common property at a mortgage foreclosure sale and use the rights to claim a title superior to the other tenants. See McSorley v. Lindsay, 62 Wash. 203, 113 P. 267 (1911). Generally, a tenant-in-common cannot acquire title to the common property at a tax sale and assert the right solely for his or her benefit. See Dahlstrum v. Beard Fruit Co., 73 Wash. 13, 131 P. 450 (1913).[2]
The inquiry under Mennonite, In re Foreclosure of Tax Liens, and RCW 84.64.050, however, is whether there is a substantial interest significantly affected by the foreclosure and sale. Respondent has the same rights after the sale as she had before it, but with respect to a new cotenant. In that a cotenant may sell or devise the property without the consent of the other cotenants, the fact that Respondent has a new cotenant not of her choosing makes no difference. Moreover, since Mr. Cleland (or in general any cotenant) could have conveyed his interest to the County, the fact that the County is a public entity also makes no difference.
Respondent also argues that RCW 84.64.070 supports her position that she was entitled to notice of the foreclosure proceedings. The County, however, maintains that the statutory language relied upon by Respondent supports its own view that foreclosure of the undivided interest of one cotenant does not require notice to other cotenants. RCW 84.64.070 concerns redemption of real property upon which certificates of delinquency have been issued, and provides that the property may be redeemed at any time before close of business the day preceding the tax sale. The language disputed by the parties is:
Tenants in common or joint tenants shall be allowed to redeem their individual interest in real property for which certificates of delinquency have been issued under the *80 provisions of this chapter, in the manner and under the terms specified in this section for the redemption of real property other than that of persons adjudicated to be legally incompetent or minors.
RCW 84.64.070.
Respondent says this means that in the event there is a tax delinquency involving a tenancy-in-common all of the owners are to receive notice. She reasons that RCW 84.64.070 then protects the rights of the tenants-in-common to elect simply to redeem their individual interest or to redeem the entire property. Respondent says that if the Legislature intended that tax foreclosure proceedings proceed against individual undivided interests, then this language is unnecessary.
Respondent reads too much into the statute. The majority rule used to be that a tenant-in-common was required to redeem the entire property sold and could not redeem merely his or her undivided interest. 85 C.J.S. Taxation § 850, at 222; see Lonsk v. Pennefather, 168 N.J.Super. 178, 402 A.2d 259 (1979), cert. denied, 82 N.J. 285, 412 A.2d 792 (1980). RCW 84.64.070 expressly allows, however, one tenant-in-common to redeem only his or her undivided interest. The reason for the statutory language, thus, is not to preclude a county from proceeding only against an individual interest, nor does it address to whom notice must be given. Contrary to Respondent's position, the language has meaning aside from those matters. RCW 84.64.070 does not support Respondent's argument that she was entitled to notice.
Respondent also argues that equitable concerns favor her position. She relies upon the principle that forfeitures are not favored in the law and will not be enforced in equity unless the right to forfeiture is clear. Dill v. Zielke, 26 Wash.2d 246, 173 P.2d 977 (1946). She argues that the tax foreclosure statute's purpose should be payment of taxes and not forfeiture of valuable rights to the state. She claims that although she tendered the taxes, penalties and interest, the County refused the tender in hopes of gaining a windfall through the sale of timber on the property. She says it is not appropriate to read RCW 84.64.050 narrowly to allow the County such a windfall, and argues that the statute should be read broadly to prevent this kind of forfeiture, which she compares to a seizure of the property.
Dill concerned a forfeitable conditional sales contract, rather than a tax foreclosure. Nevertheless, the purpose of taxation is to raise money, and a county obtains title in a tax foreclosure proceeding only as a last result. Sandberg v. Murphy, 134 Wash. 685, 688-89, 236 P. 106 (1925). Accordingly, notice of foreclosure proceedings is given to the record owner so that he or she or his or her successor in interest has an opportunity to redeem by paying the taxes, penalties, interest and costs before the tax sale. Id. at 689, 236 P. 106. Respondent is thus correct that acquisition by a county of property on which taxes have not been paid is not the desired end result. However, if all statutory and constitutional requirements have been met, a tax foreclosure will be upheld.
Furthermore, nothing in the statutes precludes a county from acquiring the property where no bidders bid, and, indeed, quite the contrary is true. See RCW 84.64.200 (providing that if no other bids are received at tax sale, the county shall be considered the bidder to the amount of all taxes, interest, and costs due on the property, and shall "acquire title thereto as absolutely as if purchased by an individual under the provisions of this chapter"). Sale of the property acquired by the County is clearly permitted under the statutes, see RCW 84.64.270 and.320, and the proceeds of such sale are to be "apportioned to the various funds existing at the date of the sale, in the territory in which such property is located, according to the tax levies of the year last in process of collection." RCW 84.64.230. Therefore, if a county which acquires property at a tax sale because there are no bidders intends to sell its interest or a part thereof, the statutes sanction such a sale, and Respondent's implication that the County would somehow be engaged in improper conduct if it merely seeks to partition and sell timber is without merit. Because the Legislature has allowed for the County's sale of property acquired at a tax sale, the possibility that the County *81 may, in fact, seek to sell the property as authorized by statute is not a reason to read RCW 84.64.050 in Respondent's favor.
Nor does RCW 84.64.080 support Respondent's position. That statute provides that if a bidder acquires the property at a tax sale, the proceeds from the sale are subject to a claim for any excess of the actual bid amount over the minimum bid due on the property, and that excess would have to be refunded to the record owner of the property provided a claim is made within three years of the sale. See RCW 84.64.080. However, RCW 84.64.080 simply does not address resale of any interest acquired following the tax sale, but concerns only the bid amount at the tax sale. The statute thus does not affect the other statutes which permit the County's sale of property acquired at a tax sale.
Insofar as possible partition may affect Respondent's interest, any loss of interest a cotenant may suffer as a result of a partition action following a tax sale is not a direct and inevitable result of the sale of his or her cotenant's undivided interest for unpaid taxes. Javaras v. Caulfield, 174 Ill. App.3d 314, 123 Ill.Dec. 785, 528 N.E.2d 330 (1988). Subsequent partition of the common property does not significantly affect the cotenant's interest within the meaning of Mennonite. Id.
Also, as to partition, mention should be made of a cotenant's right to "protect the common title." Respondent maintains that if she had received proper notice she would have paid the taxes or taken other steps to protect the interests of her stepfather and her. In light of her argument that she is an "owner" because she was a tenant-in-common of the same land in which her stepfather had an interest, she evidently reasons that she had the right to pay the delinquent taxes on his undivided interests.[3]
A cotenant does have the right to take certain actions "to protect the common title." "[O]ne cotenant can at any time protect the entire estate from injury or loss...." Morin v. City Council of San Jose, 109 Cal.App.2d 268, 240 P.2d 688, 690 (1952) (involving protest to a city's annexation plan by only one of the cotenants of property proposed to be annexed). Thus, this court has held, for example, that a cotenant has the right to pay off a mortgage against the commonly held property; the cotenant then has an equitable right to reimbursement from the other cotenants. Buchanan v. First Nat'l Bank, 184 Wash. 185, 50 P.2d 520 (1935).
However, the tax foreclosure proceedings here did not involve the "common title," but, instead, involved only Mr. Cleland's individual undivided interest upon which taxes had not been paid. By way of contrast, the principle that a cotenant has the right to protect the common title was addressed in light of tax foreclosure proceedings in Dwight v. Waldron, 96 Wash. 156, 161, 164 P. 761 (1917), quoted in Buchanan, 184 Wash. at 188, 50 P.2d 520, where taxes were delinquent on the entire property held in common. A Cotenant does have the right to pay the taxes assessed against the commonly held property as a whole.[4]
*82 Moreover, while a cotenant has the right to protect the common title, that right does not extend to preventing partition of the property through a forced sale or otherwise. RCW 7.52.010 provides for a cotenant's right to partition, and where that right is properly exercised, another cotenant cannot prevent partition regardless of the fact that it may affect the entire commonly held property. Thus, Respondent cannot prevent partition solely on the basis that she is a tenant-in-common with the right to protect the "common title." Nor does she have any greater right to fend off a county attempt to partition than she does to fend off partition by anyone else who is her cotenant.
Finally, as to partition, here the record does not indicate that partition will be sought.
Lastly, Respondent suggests that if notice is not required here, then in the case of separated spouses the County could foreclose against the community interests of one spouse for unpaid taxes without notice to the other spouse. Because the property interests at stake where community property is concerned vary significantly from that of a cotenant like Respondent, the court's holding in this case will not apply in the community property context.
We hold that where one tenant-in-common's undivided fractional interest in real property is being foreclosed upon for nonpayment of real estate taxes on that interest, notice of the foreclosure proceedings to other cotenants is not required by RCW 84.64.050.
The County also argues that the trial court improperly granted Respondent's motion to intervene in these proceedings. We agree, and hold that Respondent does not have an interest in the property sufficient to come within CR 24(b)(2). Her motion to intervene in these proceedings should have been denied.
We reverse the trial court's order granting leave for Respondent to intervene, and reverse the order vacating the judgment of foreclosure and order of sale and voiding the tax deed delivered to Clallam County.
DURHAM, C.J., and DOLLIVER, GUY, ALEXANDER and TALMADGE, JJ., concur.
JOHNSON, J., dissents with separate opinion.
JOHNSON, Justice (dissenting).
I would hold an undivided property interest by definition means each cotenant has an ownership interest in the whole property sufficient to require notice under RCW 84.64.050. By not giving notice of the foreclosure to Ms. Folk and the other cotenants, the City failed to comply with RCW 84.64.050, rendering the sale invalid. For this reason, I respectfully dissent.
The majority reasons that a cotenant is not an owner entitled to notice under RCW 84.64.050 because a "cotenant's individual title interest may be transferred or encumbered without the consent or knowledge of the other cotenants." Majority at 78. Although a cotenant's interest is alienable, the majority overlooks the fundamental nature of a cotenant's property interest. By definition, a cotenancy is a concurrent estate in which each cotenant owns the same property at the same time. See 4 David A. Thomas, Thompson on Real Property § 32.02 (1994). Their interests are undivided; each cotenant is entitled to possess all parts of the property at all times. Butler v. Craft Eng Constr. Co., 67 Wash.App. 684, 695, 843 P.2d 1071 (1992). As a cotenant, then, Ms. Folk is an "owner" of the property and was entitled to notice under RCW 84.64.050.
In other cases, we have recognized that there are some limitations on a cotenant's *83 rights with regard to the property, notwithstanding the ability of a cotenant to sell or devise his or her interest. See, e.g., Rouse v. Glascam Builders, Inc., 101 Wash.2d 127, 677 P.2d 125 (1984) (a cotenant generally may not bring an action against a party obligated to the cotenants without joinder of the cotenants); Butler, 67 Wash.App. 684, 843 P.2d 1071 (cotenant may not attempt to transfer its interest by metes and bounds without the consent or ratification of the other cotenants). This is a situation where the cotenant's interest in the entire property limits the ability of a third party to foreclose on one of the cotenant's interest in the property.
In this case, Ms. Folk and the other cotenants are owners of the property by definition and, therefore, were entitled to notice of the tax foreclosure. The failure of the County to give notice to Ms. Folk and the other cotenants made the foreclosure invalid.
SMITH and SANDERS, JJ., dissent.
NOTES
[1] The County's motion to supplement its opening brief is granted.
[2] RCW 84.56.340 permits a cotenant to pay taxes on his or her undivided interest only, and RCW 84.64.070 permits a cotenant to redeem only his or her undivided interest before a tax sale.
[3] Respondent also maintains that her father-in-law's, Mr. Cleland's, intent all along was to transfer his interest to her. While this may be the case, he did not do so before the foreclosure proceedings and tax sale, of which he had notice. In addition, the County published notice of the tax sale, as required by RCW 84.64.080, but Respondent did not bid at the tax sale.
[4] In contrast to the present case, a different situation exists if taxes have been assessed against the common property as a whole, and foreclosure proceedings involve the whole property held in common. The Ninth Circuit addressed the notice requirement of RCW 84.64.050 under such circumstances, holding that lack of notice to one of the two cotenants there rendered the entire proceedings void. In re Sienkiewicz, 900 F.2d 206, 208 (9th Cir.1990) (citing Rosholt v. Snohomish County, 19 Wash. App. 300, 305, 575 P.2d 726 (1978)); see Annotation, Nora A. Uehlein, Right of Interested Party Receiving Due Notice of Tax Sale or of Right to Redeem to Assert Failure or Insufficiency of Notice to Other Interested Party, 45 A.L.R.4th 447, § 2[a], at 452 (1986) ("[w]here cotenants own the property and it is assessed as an entirety, most jurisdictions require that notice be provided to all the cotenants, even though the statutes may use the singular form of the word `owner'") (emphasis added).

In In re Foreclosure of Liens, 117 Wash.2d 77, 92, 811 P.2d 945 (1991), we concluded that notice had been given of real estate tax foreclosure proceedings to all parties who were entitled to receive notice. The court therefore declined to decide what the effect would be of the lack of proper notice to all parties. In contrast to the Ninth Circuit's position that lack of proper notice to one cotenant of foreclosure proceedings involving the commonly held property renders the entire proceedings void, some courts in other jurisdictions have held that a tax sale and tax deed is invalid only as to the interest of the cotenant(s) not receiving notice, but valid as to those receiving notice. See, e.g., Masick v. Schenectady, 164 A.D.2d 488, 564 N.Y.S.2d 569 (1991); see generally Annotation, 45 A.L.R.4th 447 (1986). Since this issue is not presented in this case, we do not resolve it.