**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Marriage of: | No. 57487-0-II (consolidated with No. 57967-7-II) |
| FLAVIO FAUSTINO LEIJA, | |
| Respondent, | UNPUBLISHED OPINION |
| and | |
| ANGELA GARCIA-LEIJA, | |
| Appellant. | |

GLASGOW, J.—In 2019, Flavio Leija and Angela Garcia-Leija petitioned for dissolution of their marriage. During the marriage, they copurchased a property in Yakima with Garcia-Leija's brother, paying cash for their 50 percent interest. Garcia-Leija's brother took out a mortgage on the Yakima property solely in his name. During the marriage dissolution proceedings, the trial court determined that Leija and Garcia-Leija's 50 percent ownership interest in the Yakima property was the parties' community property. As part of the property division, the court ordered Garcia-Leija to pay Leija 40 percent of their 50 percent interest in the property. The trial court did not deduct any portion of her brother's mortgage before determining the value of the parties' 50 percent interest.

Garcia-Leija argues that the trial court should have first deducted the mortgage from the full value of the property before dividing the remainder in half to establish the value of the parties' 50 percent interest. We conclude that substantial evidence supported the trial court's refusal to do

so because Garcia-Leija was not responsible for her brother's mortgage on the property. We also conclude that the brother's mortgage only encumbered his separate interest in the property and not the parties' 50 percent interest. We affirm and remand only for the trial court to correct a clerical or scrivener's error in the amended final dissolution order.

FACTS

I. BACKGROUND FACTS

In August 2019, Leija petitioned for the dissolution of his marriage with Garcia-Leija. At the time, they had three dependent children.

During the marriage, Leija and Garcia-Leija purchased three properties in Washington: a house in Camas, a lot in Coos Bay, and a house in Yakima. They copurchased the Yakima property with Garcia-Leija's brother in 2017 with the intent that Garcia-Leija's mother would live there. Garcia-Leija's brother owned a 50 percent interest in the property, and Garcia-Leija and Leija owned the other 50 percent interest. To pay for his half of the Yakima property, Garcia-Leija's brother took out a mortgage on the property. Though there is some debate about how Leija and Garcia-Leija raised the funds, it is undisputed that they paid the entire amount due for their 50 percent portion of the property at the initial purchase. After the purchase of the Yakima property, Leija gave Garcia-Leija a signed quitclaim deed.

II. LEGAL PROCEEDINGS

The marriage dissolution proceedings were contentious. In 2021, Leija and Garcia-Leija were parties in a five-day trial to determine the parenting plan and division of property. The trial court also held many hearings before and after the trial.

Initially, Garcia-Leija argued that the Yakima home was her separate property. However, she has abandoned that argument on appeal. During a pretrial hearing, Garcia-Leija's counsel explained that there was a mortgage on the Yakima house "which is solely in the name of the brother." Verbatim Rep. of Proc. (VRP) at 80. During trial, Leija testified that he did not believe there was an outstanding debt, like a mortgage, associated with Garcia-Leija's interest in the Yakima property. Garcia-Leija's brother testified that he paid for his half of the purchase price for the Yakima home by taking out a mortgage. When asked who was listed on the mortgage for the Yakima home, he said, "[I]f I default, it's her responsibility." VRP at 496.

Garcia-Leija protested that Leija overvalued the Yakima home because there was a lien on the property. She said that there was a mortgage on the Yakima home that her brother "pays for and I help pay for some of it." VRP at 802. Garcia-Leija testified that the mortgage was in her brother's name, but she signed a document that "if he cannot pay, then I take responsibility." VRP at 863. She never produced this document. She also indicated that she paid $375 for the Yakima property every month for "property taxes and other parts of the mortgage," but she could not produce documentation that this money went toward the mortgage. VRP at 864.

After trial, the trial court entered an order dividing real community property, including the parties' 50 percent interest in the Yakima home. The trial court gave Garcia-Leija 60 percent and Leija 40 percent of all real community property. The trial court ordered Garcia-Leija to pay Leija for his 40 percent of the community's total 50 percent interest in the Yakima property. The trial court did not first deduct any amount owed on the mortgage from the total value of Garcia-Leija and Leija's 50 percent share.

3

In subsequent hearings, the parties argued about whether the value of their 50 percent share in the Yakima property should be reduced by half the amount of the unpaid mortgage on the home, which at the time was approximately $157,300. Garcia-Leija again claimed that she paid for part of the mortgage and signed paperwork assuming responsibility for it. However, Garcia-Leija provided no documentation to the court showing that she was liable on the mortgage. The mortgage payment documents she provided only listed her brother's name.

Leija's counsel argued that no portion of the mortgage should be deducted from the community share of the Yakima home. If the property were to be sold, the mortgage would be treated as solely the brother's separate debt to secure his half in the interest in the home. Leija's counsel argued, "[Garcia-Leija's] interest is the full half of the appraised value because she herself has no debt associated with her half." VRP at 1471.

The trial court noted that a person's name can be on a property without also being on a mortgage for that property. Ultimately, it concluded that there should be "no reimbursement for the mortgage. The mortgage, it belongs to [Garcia-Leija's brother]. When this house is sold, [Garcia-Leija will] get her 50 percent and his will be minus the mortgage." VRP at 1475.

After years of hearings, the trial court adopted an appraisal of the Yakima property at $585,000. The trial court did not deduct the amount owed on the mortgage before calculating the value of the community's 50 percent interest. As a community, Leija and Garcia-Leija owned half, or $292,500, of the total value. The trial court thus required Garcia-Leija to pay Leija his 40 percent share of their 50 percent interest, which amounted to $117,000.

## ANALYSIS

### I. LEGAL BACKGROUND AND STANDARDS OF REVIEW

In Washington, when two or more people buy real property together, they are assumed to be tenants-in-common unless specified otherwise. RCW 64.28.020(1). Each cotenant holds an undivided interest in the whole property and has the right to possess and enjoy the whole property. *In re Foreclosure of Liens*, 130 Wn.2d 142, 148, 922 P.2d 73 (1996). However, each cotenant owns a separate estate and has a distinct title to that estate. *Id.* One tenant-in-common can thus sell, convey, or mortgage their separate title interest in the property without the other cotenants joining or consenting. *Id.* at 148-49.

In a marriage dissolution, a trial court must divide the parties' property in a "just and equitable" manner. RCW 26.09.080. In Washington, "all property acquired during marriage is presumptively community property, regardless of how title is held." *Dean v. Lehman*, 143 Wn.2d 12, 19, 18 P.3d 523 (2001). All property, both separate and community, is before the court for a just and equitable distribution. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999).

In a challenge to the trial court's property division, we will only substitute our judgment for the trial court's if there has been a manifest abuse of discretion. *In re Marriage of Groves*, 10 Wn. App. 2d 249, 254, 447 P.3d 643 (2019). The trial court abuses its discretion if "its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Underwood*, 181 Wn. App. 608, 610, 326 P.3d 793 (2014).

The trial court must determine the value of the parties' property, which is a question of fact. *In re Marriage of Porter*, 3 Wn.3d 579, 588, 555 P.3d 379 (2024). We review factual findings

for substantial evidence. *Id.* Substantial evidence exists if the record contains sufficient evidence to convince a fair-minded, rational person of the finding. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). For factual findings, we do not reweigh the trial court's witness credibility determinations. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). However, "'[w]here the relevant facts are undisputed and the parties dispute only the legal effect of those facts, the standard of review is . . . de novo.'" *Marriage of Porter*, 3 Wn.3d at 588 (alteration in original) (quoting *Meadow Valley Owners Ass'n v. St. Paul Fire & Marine Ins. Co.*, 137 Wn. App. 810, 816, 156 P.3d 240 (2007)).

## II. LEGAL ANALYSIS

A.    Factual Finding About Mortgage

Garcia-Leija argues that the trial court erred when it found that she was not liable for her brother's mortgage on the Yakima property. Therefore, Garcia-Leija alleges the trial court erred when it did not first subtract the amount due on the mortgage before calculating the community's 50 percent share of the property's value. We disagree.

Here, the trial court ultimately valued the parties' 50 percent share in the Yakima property at $292,500, which is one half the total appraised value and determined that this community share was not encumbered by a mortgage. This factual finding is supported by substantial evidence in the record. It is true that Garcia-Leija and her brother testified that she was secondarily liable for the mortgage and made payments toward it. However, Garcia-Leija did not produce documentary evidence supporting this claim. In fact, the documents showing a mortgage on the property listed only Garcia-Leija's brother's name. Additionally, in hearings and pleadings prior to trial, Garcia-Leija stated that the mortgage was only in her brother's name. Leija also testified that he did not

believe Garcia-Leija was liable for any mortgage on the property. Based on this evidence, or rather lack of evidence, a fair-minded, rational person could conclude that Garcia-Leija was not liable for a mortgage on the Yakima property.

B.      Legal Impact of Mortgage

Garcia-Leija also argues that regardless of whether she was secondarily liable for her brother's mortgage on the Yakima property, the mortgage encumbered the entire property. Thus, the amount due on the mortgage should have been deducted from the value of the property before the trial court calculated the community's 50 percent share. We disagree.

Here, the parties and Garcia-Leija's brother purchased the Yakima property together—and there is no evidence showing another kind of ownership—so they are tenants-in-common. Thus, they each owned a separate title and estate in the Yakima property. Garcia-Leija's brother was entitled to take out a mortgage on his separate interest in the property. *In re Foreclosure of Liens*, 130 Wn.2d at 148-49. And this mortgage would not encumber the parties' separate interest as cotenants. *Id.* The trial court did not err by concluding that the parties' interest in the Yakima property was unencumbered by the brother's mortgage.

The trial court did not err by concluding that the parties were not liable for Garcia-Leija's brother's mortgage on the Yakima property, both as a matter of fact and as a matter of law. Thus, the court did not abuse its discretion by not subtracting any portion of that mortgage before calculating the parties' community share. We affirm.

C.      Clerical Error

Garcia-Leija acknowledges that there was a clerical error in the amended final dissolution order, which incorrectly stated that Leija was entitled to half of the community's share in the

Yakima property, though the trial court accurately calculated his 40 percent personal ownership at $117,000. She requests remand to correct this error. We agree.

We remand only for the trial court to correct this clerical error by changing the amended final dissolution order to reflect Leija's 40 percent interest in the community's 50 percent share of the Yakima property.

## ATTORNEY FEES

### I. APPELLANT ATTORNEY FEES

Garcia-Leija requests attorney fees on appeal under RCW 26.09.140. To determine whether a party receives appellate attorney fees under this statute, we exercise our discretion and consider both the merit of the issues on appeal and the parties' financial resources, "balancing the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014). Garcia-Leija does not prevail on the merits. Moreover, we have reviewed the parties' financial affidavits, and we recognize both parties received significant assets in the marriage dissolution. We decline to award attorney fees to Garcia Leija based on RCW 26.09.140.

### II. RESPONDENT ATTORNEY FEES

Leija argues that this court should award all of his appellate attorney fees under RAP 18.9(a) because Garcia-Leija's appeal is frivolous and it purposefully delayed and extended the litigation.

This court may order a party who uses appellate rules "for the purpose of delay [or] files a frivolous appeal, . . . to pay terms or compensatory damages to any other party who has been harmed." RAP 18.9(a). The primary inquiry under this rule is "whether, when considering the

record as a whole, the appeal is frivolous, *i.e.*, whether it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187 (1980). In determining whether an appeal is frivolous, we resolve all doubts in favor of the appellant. *Id.* at 435.

Though she does not prevail, Garcia-Leija's claims involve debatable issues upon which reasonable minds may differ. Thus, we decline to award Leija attorney fees on this basis.

Leija also complains that Garcia-Leija engaged in purposeful delay of the appeal that warrants an award of attorney fees. We are troubled by the significant delay in the filing of the appellant's brief in this case. However, while Leija asserts it was not necessary to designate so much of the record to resolve the issue presented here, we recognize that an appellant may, in good faith, narrow the assignments of error after reviewing the whole record. Moreover, our court granted extensions to cover almost all of the delay that Leija complains about. Ultimately, because Garcia-Leija's claims are not frivolous and she adhered to the orders from this court, we also decline to award attorney fees based on delay or harassment.

## CONCLUSION

We affirm. We remand only for the trial court to correct the clerical error in the amended final dissolution order. We decline to award attorney fees on appeal.

No. 57487-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

_____, J.